RIDDLE v McLOUTH STEEL PRODUCTS CORPORATION

Docket No. 89273. Argued November 6, 1991 (Calendar No. 5). Decided June 23, 1992. Rehearing denied *post,* 1209.

Vance Riddle, brought an action in Wayne Circuit Court against McLouth Steel Products Corporation, claiming lost wages as a result of injuries sustained when he fell in the course of his employment with the W. T. Cartage Manufacturing Company while delivering steel coils to McLouth. Lucinda Riddle, his wife, claimed loss of consortium. The plaintiffs alleged that McLouth breached its duty to exercise reasonable care in allowing the condition of a coil field to become slippery, and that its failure to warn of the condition was the proximate cause of his injuries. The court, William J. Giovan, J., entered judgment on a jury award for the plaintiffs, but reduced the award after finding Vance Riddle thirty percent negligent. The Court of Appeals, MACKENZIE, P.J., and MARILYN J. KELLY and T. M. BURNS, JJ., affirmed (Docket No. 109941). The defendant appeals.

In an opinion by Justice MALLETT, joined by Justices BRICKLEY, BOYLE, RILEY, and GRIFFIN, the Supreme Court *held:*

The jury instructions did not accurately describe the duty of a premises owner to invitees. An owner has no duty to warn of open and obvious dangers.

1. A premises owner must maintain its premises in a reasonably safe condition and exercise due care to protect invitees from conditions that might result in injury. The duty to warn extends to hidden or latent defects, the underlying rationale being that liability for injuries resulting from defectively maintained premises should rest upon the person in control or possession of the premises and best able to prevent injury. While not an insurer of the safety of invitees, a premises owner must exercise reasonable care to diminish the hazard of injury to invitees. A premises owner is not liable to invitees where the dangers are known to the invitee or are so obvious and apparent that the invitee may reasonably be expected to discover them, unless the premises owner anticipates harm.

2. The adoption of comparative negligence in Michigan does not abrogate the necessity of initially finding that the premises owner owed a duty to invitees. This threshold issue must be

decided by the trial court as a matter of law, and, once established, the reasonableness of the owner's conduct is a question for the trier of fact, as well as whether there was a breach of the duty and whether it was a proximate cause of the plaintiff's injuries. Comparative negligence, by contrast, is an affirmative defense in which a defendant presents evidence of the plaintiff's negligence in order to reduce liability; it does not alter the defendant's initial duty.

3. In this case, considered as a whole, the trial court's instructions to the jury were deficient in setting forth the appropriate duty of premises owners to invitees, and left the impression that a premises owner's duty to warn an invitee of known and obvious dangers is absolute and ever present.

Reversed and remanded.

Justice LEVIN, joined by Chief Justice CAVANAGH, dissenting, stated that even if the Court of Appeals erred concerning the effect of the adoption of comparative fault on any need to instruct concerning an open and obvious danger, a new trial is not justified absent an objection and proffer of a correct instruction, or a basis for finding that a manifest injustice resulted from failing to add the language omitted to the instruction pursuant to SJI2d 19.03.

McLouth submitted a requested instruction that avoided any reference to the obligation of a possessor of land to warn an invitee of dangers of which it knew or had created. Because Riddle was entitled to such an instruction, it was not correct. The asserted deficiency was not raised by McLouth's counsel, however. Mere submission of an alternative instruction, without any statement of exception does not constitute an objection contemplated by MCR 2.516(C). To preserve a charge of error in jury instructions for appellate review, a timely and specific objection must be made at trial before the jury begins its deliberations in order to afford the court an opportunity to rectify an erroneous instruction.

An unpreserved instructional error requires reversal only where necessary to prevent manifest injustice. SJI2d 19.03 was given in a context in which it was made clear that it was for the jury to decide what was reasonable for McLouth to do in order to meet its obligation to keep its premises safe for invitees. Given the theories of the parties presented to the jury by the court, the single reference concerning McLouth's obligation to warn did not result in manifest injustice to McLouth.

The jury apportioned the fault of the parties. The gravamen of the claim of instructional error is that Riddle's knowledge of the oily condition of the coil field made the danger open and

obvious to him and thus eliminated any obligation on McLouth's part to warn him. Thus, the jury in fact accepted the proposition that McLouth did not have an absolute duty to warn Riddle.

The issue is not one of duty, however, but of a standard of care. If an instruction regarding no duty to warn of known and obvious danger is given, it should be balanced, i.e., it should state not only that there is no obligation to warn of known or obvious dangers, but also the further qualification: unless the possessor should anticipate the harm despite such knowledge or obviousness. Whether an invitor is negligent because of the failure to warn an invitee of an open and obvious danger is a question of the standard of care required under specific circumstances, rather than a question of duty. "Duty" refers to a legally recognized obligation to observe or conform to a particular standard of conduct toward another. However, the term also is used in negligence case law, equivocally, to address questions relating to standard of care and even proximate cause. If duty is understood to refer to the relationship necessary to give rise to liability, it follows that the adoption of comparative negligence could not supersede the need to determine as a matter of law whether a particular defendant owed a duty to a particular plaintiff. Application of principles of comparative negligence presumes breach of a duty.

The no-duty rule does not exhaust the obligations of an invitor to an invitee. While a premises owner is obliged to warn an invitee of hidden or latent dangers where the danger is known or obvious, the owner has no absolute obligation to warn, and the question then is one of due care, permitting a jury to find a warning appropriate under the circumstances.

182 Mich App 259; 451 NW2d 590 (1990) reversed.

*Chambers, Steiner, Mazur, Ornstein & Amlin, P.C. (by Angela J. Nicita and Courtney E. Morgan, Jr.),* for the plaintiffs.

*Garan, Lucow, Miller, Seward, Cooper & Becker, P.C. (by Rosalind Rochkind and Matthew A. Seward),* for the defendant.

Amicus Curiae:

*Mark Granzotto, Monica Farris Linkner,* and

*Charles P. Burbach* for Michigan Trial Lawyers Association.

MALLETT, J. We granted leave to consider a premises owner's duty to warn invitees of known or obvious dangers and to determine (1) whether the trial court correctly instructed the jury that, pursuant to SJI2d 19.03, a premises owner must warn an invitee of known or obvious dangers; and (2) whether the jury instruction on violation of a safety regulation pursuant to SJI2d 12.05 constituted error requiring reversal. We conclude that the jury instructions given do not accurately set out the duty of a premises owner. Accordingly, we reverse the decisions of the lower courts and remand the case for further proceedings consistent with this opinion.

I

Plaintiff Vance Riddle has worked with or around coils of steel for over seventeen years. At the time of his accident, Riddle was employed with W. T. Cartage Manufacturing Company as a truck driver and steel and general freight hauler.

In 1983, Riddle began hauling steel coils from defendant McLouth Steel's Trenton plant to its Gibraltar plant on a daily basis. Prior to Gibraltar plant delivery, the steel coils are treated to prevent rusting in a process called "pickling." Under this process, cold rolled steel is unrolled and covered with oil. The steel coils are then rerolled and placed on racks in a coil field[1] where the excess oil is allowed to drain. The treated steel coils are then loaded onto trucks and taken to McLouth's Gibraltar plant. Here, the steel coils are unloaded and

[1] The coil field is a cement floor on which metal rails have been placed to prevent the steel from rolling.

stored on metal rails where they continue to drain until moved for additional processing.

As a consequence of the "pickling" process, oil drips and accumulates on the plant floor creating slippery conditions. There are no signs posted at the Gibraltar plant warning of the slippery conditions. While there are designated walkways around the coil field, there are no signs prohibiting McLouth employees from walking through the coil field. Sometimes the accumulated oil remains on the floor for six to eight weeks.

On January 19, 1984, the date of his injury, Vance Riddle and another truck driver, Charles Pfeiffer, were engaged in loading and unloading treated steel coils at the Gibraltar plant. Riddle was asked by a McLouth employee to deliver a box of computer billing cards to McLouth's receiving clerk's office before leaving for the Trenton plant. After unloading their trucks, Riddle and Pfeiffer cut across the coil field to the clerk's office. Evidence submitted at trial indicated that the path that Riddle and Pfeiffer took through the coil field was the most direct route to the clerk's office. Although steel coils were being stored in the coil field about thirty feet from their path, both Riddle and Pfeiffer testified that they did not realize the area through which they walked contained oil. Moreover, Riddle and Pfeiffer testified that they had observed a McLouth employee cleaning the area earlier in the day. While crossing the coil field, Riddle suddenly lost his balance and fell backward. His hard hat flew off and he hit his head on one of the metal rails and lost consciousness. Riddle sustained severe injuries, including a cerebral concussion, injury to the left shoulder and elbow, and back strain.[2]

---

[2] Vance Riddle continues to experience severe personality changes

Vance Riddle brought suit against defendant McLouth Steel to recover lost wages, and his wife, Lucinda Riddle, made claims for loss of consortium. Riddle argued that McLouth breached its duty to exercise reasonable care and that McLouth's failure to warn of the slippery condition of the coil field was the proximate cause of his injuries. McLouth argued that Riddle had knowledge of the presence of oil in the coil field and therefore McLouth had no duty.

The jury awarded Vance Riddle $4,680,000, and Lucinda Riddle $320,000 for loss of consortium, but reduced the award after it found Vance Riddle thirty percent comparatively negligent. After trial, McLouth filed motions for a directed verdict, for a new trial, or remittitur. The trial court denied all motions. McLouth then filed a motion for reconsideration, which was also denied.

The Court of Appeals found no instructional error and affirmed the decision of the circuit court, 182 Mich App 259; 451 NW2d 590 (1990), and denied McLouth's motion of rehearing.[3]

We granted leave by order dated March 27, 1991. 437 Mich 929.

II

It is well settled in Michigan that a premises owner must maintain his or her property in a reasonably safe condition and has a duty to exercise due care to protect invitees from conditions that might result in injury.[4] *Beals v Walker,* 416 Mich 469, 480; 331 NW2d 700 (1982); *Torma v*

and loss of memory. At trial, medical experts testified that Riddle would have to be institutionalized within five to ten years.

[3] On appeal, Judge MACKENZIE indicated that she would have reversed on rehearing.

[4] An invitee, and in this case a business invitee, is one who enters a premises to conduct business that concerns the premises owner at the

*Montgomery Ward & Co,* 336 Mich 468, 476; 58 NW2d 149 (1953).

However, a premises owner's duty to warn extends to hidden or latent defects. *Samuelson v Cleveland Iron Mining Co,* 49 Mich 164; 13 NW 499 (1882). The rationale underlying this rule is that liability for injuries resulting from defectively maintained premises should rest upon the one who is in control or possession of the premises and, thus, is best able to prevent the injury. See *Nezworski v Mazanec,* 301 Mich 43, 56; 2 NW2d 912 (1942); *Smith v Peninsular Car Works,* 60 Mich 501, 504; 27 NW 662 (1886). This Court has held:

> Every man who expressly or by implication invites others to come upon his premises, assumes to all who accept the invitation the duty to warn them of any danger in coming, which he knows of or ought to know of, and of *which they are not aware.* [*Samuelson* at 170. Emphasis added.]

Later cases carried this proposition forward. In *Caniff v Blanchard Navigation Co,* 66 Mich 638; 33 NW 744 (1887), the plaintiff fell through an open hatch on a ship being docked for the winter.[5] Because the danger was not hidden, this Court denied plaintiff a cause of action:

> The occupier of premises, no doubt, is bound, as

owner's express or implied invitation. See Prosser & Keeton, Torts (5th ed), § 61, pp 419-424.

[5] The Court explained why the hatches were open:

> It also appears that it is a universal custom when vessels are in port, and especially when laid up for the winter, to ventilate them for the purpose of stopping decay in them, and, in the case of iron vessels, to protect them from rusting. This is done by removing the hatches, to allow the air to circulate through the hold. [66 Mich 641.]

to persons thereon by his express or implied invitation, to keep the premises free from, or give a warning of, danger known to him and unknown to the visitor. But this rule has no application to a case where a person who from his experience, through many years, in sailing a vessel, knows that it is customary to leave the hatchways of vessels open while lying in port, and whom observation teaches that they are liable to be open rather than closed, and are sources of danger which he must avoid at his peril. [66 Mich 647.]

Similarly, in *Nezworski v Mazanec, supra,* the plaintiff sued for injuries sustained when she descended a darkened stairway on the defendant's premises.[6] This Court expressed the rule simply: "If there were hidden dangers in connection with the doorway, platform, stairway, and alley, it was [the premises owner's] duty to give warning thereof." *Id.* at 61. Thus, if the dangers are known or obvious to the invitee, no absolute duty to warn exists, and the invitee cannot recover on that theory.

This Court adopted the definition provided in 2 Restatement Torts, 2d, § 343 of the general legal duty that a premises owner owes an invitee. In *Ackerberg v Muskegon Osteopathic Hosp,* 366 Mich 596, 600; 115 NW2d 290 (1962), we held:

"A possessor of land is subject to liability for bodily harm caused to business visitors by a natural or artificial condition thereon if, but only if, he (a) knows, or by the exercise of reasonable care could discover, the condition which, if known to

---

[6] The threshold issue in *Nezworski* was whether plaintiff was an invitee or trespasser. Traditionally, the status of the injured party determines the premises owner's duty of care. See, generally, Prosser & Keeton, Torts (5th ed), §§ 58-62, pp 393-434.

him, he should realize as involving an unreasonable risk to them."[7]

The plaintiff in *Ackerberg* sustained severe head injuries after falling from an unguarded rear platform at the entrance of the defendant's premises. This Court found that, despite the plaintiff's contributory negligence, there was a question of fact regarding the defendant's negligence that was appropriate for jury consideration, and reversed the directed verdict for the defendant.

In *Quinlivan v Great Atlantic & Pacific Tea Co, Inc,* 395 Mich 244; 235 NW2d 732 (1975), we affirmed *Ackerberg* and adopted the revised § 343 and subsections (b) and (c), which further define a premises owner's duty to invitees. 2 Restatement Torts, 2d, § 343 reads in full:

> A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and (c) fails to exercise reasonable care to protect them against the danger.

*Quinlivan* overruled existing case law which held that a premises owner owed no duty to a business invitee regarding obvious hazards arising from natural accumulations of ice and snow. We held that "[a]s such duty pertains to ice and snow accumulations, it will require that reasonable measures be taken . . . ." *Quinlivan* at 261.[8]

---

[7] This definition is based on a version of § 343, that has been revised. See 2 Restatement Torts, 2d, § 343, pp 215-216.

[8] Both *Ackerberg* and *Quinlivan* illustrate the evolution of Michi-

Finally, in *Williams v Cunningham Drug Stores, Inc,* 429 Mich 495, 500; 418 NW2d 381 (1988), this Court held that a premises owner is not an insurer of the safety of invitees. Moreover, we held that a possessor of land does not owe a duty to protect his invitees where conditions arise from which an unreasonable risk cannot be anticipated or of dangers that are so obvious and apparent that an invitee may be expected to discover them himself. *Id.* Specifically, we found that, as a matter of law, the duty of reasonable care a merchant owes its invitees does not extend to providing armed, visible security guards to protect customers from the criminal acts of third parties. *Id.* at 501.

Further, we noted the standard outlined in 2 Restatement Torts, 2d, § 343A, whereby the invitee's knowledge of dangerous conditions may be properly considered in determining a premises owner's liability. *Williams, supra* at 500, n 12. 2 Restatement Torts, 2d, § 343A(1) provides:

> A possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness.[9]

---

gan's adoption of 2 Restatement Torts, 2d, § 343. These cases were decided before Michigan's adoption of the comparative negligence standard. *Placek v Sterling Heights,* 405 Mich 638; 275 NW2d 511 (1979). Moreover, in *Quinlivan,* we held that the invitee's knowledge of the premises conditions should be considered in the context of contributory negligence. *Quinlivan* at 261. Our conclusions in *Ackerberg* and *Quinlivan* regarding a premises owner's duty to invitees are nonetheless appropriate today.

9 Several jurisdictions have adopted 2 Restatement, § 343 or § 343 in conjunction with § 343A. See *Kremer v Carr's Food Center, Inc,* 38 Alas 3d 1; 462 P2d 747 (1969); *Jarr v Seeco Const Co,* 35 Wash App 324; 666 P2d 392 (1983); *Markowitz v Arizona Parks Bd,* 146 Ariz 352; 706 P2d 364 (1985); *Everett v United States,* 717 F Supp 917 (D Me, 1989); *Burrell v Meads,* 569 NE2d 637 (Ind, 1991).

Our conclusions in these Michigan cases correctly define the law regarding a premises owner's duty of care to invitees.

### III

The Court of Appeals incorrectly determined that the "no duty to warn of open and obvious danger" rule is inconsistent with comparative negligence and should be abolished. 182 Mich App 266. The adoption of comparative negligence in Michigan does not abrogate the necessity of an initial finding that the premises owner owed a duty to invitees. Moreover, we find that the duty element and the comparative negligence standard are fundamentally exclusive—two doctrines to be utilized at different junctures in the determination of liability in a negligence cause of action.

The threshold issue of the duty of care in negligence actions must be decided by the trial court as a matter of law. *Antcliff v State Employees Credit Union,* 414 Mich 624; 327 NW2d 814 (1982). In other words, the court determines the circumstances that must exist in order for a defendant's duty to arise. *Smith v Allendale Mut Ins Co,* 410 Mich 685, 714-715; 303 NW2d 702 (1981). See, generally, Prosser & Keeton, Torts (5th ed), ch 5. Duty may be established "specifically by mandate of statute, or it may arise generally by operation of law under application of the basic rule of the common law, which imposes on every person engaged in the prosecution of any undertaking an obligation to use due care, or to so govern his actions as not to unreasonably endanger the person or property of others." *Clark v Dalman,* 379 Mich 251, 261; 150 NW2d 755 (1967).

Moreover, the "no duty to warn of open and obvious danger" rule is a defensive doctrine that

attacks the duty element that a plaintiff must establish in a prima facie negligence case.[10] A negligence action may only be maintained if a legal duty exists which requires the defendant to conform to a particular standard of conduct in order to protect others against unreasonable risks of harm. If the plaintiff is a business invitee, the premises owner has a duty to exercise due care to protect the invitee from dangerous conditions. *Beals, supra.* However, where the dangers are known to the invitee or are so obvious that the invitee might reasonably be expected to discover them, an invitor owes no duty to protect or warn the invitee unless he should anticipate the harm despite knowledge of it on behalf of the invitee. *Williams, supra.*

Once a defendant's legal duty is established, the reasonableness of the defendant's conduct under that standard is generally a question for the jury. See *Smith v Allendale, supra* at 714. The jury must decide whether the defendant breached the legal duty owed to the plaintiff, that the defendant's breach was the proximate cause of the plaintiff's injuries, and thus, that the defendant is negligent.

If, for example, the dangerous conditions on the premises are hidden or latent, the premises owner is obliged to warn the invitee of the dangers. Defendant's failure to warn under these circumstances may indicate a breach of the legal duty

[10] The elements of a cause of action in negligence are as follows:

    1. That the defendant owed a legal duty to the plaintiff;
    2. That the defendant breached or violated the legal duty it owed to the plaintiff;
    3. That the plaintiff suffered damages; and
    4. That the defendant's breach of duty was a proximate cause of the damages suffered by the plaintiff.

See *Clark v Dalman* at 260.

owed plaintiff. If the conditions are known or obvious to the invitee, the premises owner may nonetheless be required to exercise reasonable care to protect the invitee from the danger. *Quinlivan, supra* at 260-261. What constitutes reasonable care under the circumstances must be determined from the facts of the case. While the jury may conclude that the duty to exercise due care requires the premises owner to warn of a dangerous condition, there is no absolute duty to warn invitees of known or obvious dangers.[11]

[11] Contrary to the dissent's assertion that "standard of care, not duty, lies at the heart of the present dispute[,]" the following sections of the Restatement clearly speak of the "*duty* of reasonable care." We disagree with the dissent's assertion and believe that the issue in this instance is whether the defendant had a duty to warn the plaintiff of the presence of oil in the coil field.

2 Restatement Torts, 2d, § 343A, comments e and f, pp 219-220, may offer guidance in the determination of the scope of a premises owner's duty to invitees where known or obvious conditions are present:

> e. In the ordinary case, an invitee who enters land is entitled to nothing more than knowledge of the conditions and dangers he will encounter if he comes. If he knows the actual conditions, and the activities carried on, and the dangers involved in either, he is free to make an intelligent choice as to whether the advantage to be gained is sufficient to justify him in incurring the risk by entering or remaining on the land. The possessor of the land may reasonably assume that he will protect himself by the exercise of ordinary care, or that he will voluntarily assume the risk of harm if he does not succeed in doing so. Reasonable care on the part of the possessor therefore does not ordinarily require precautions, or even warning, against dangers which are known to the visitor, or so obvious to him that he may be expected to discover them.
>
> *   *   *
>
> f. There are, however, cases in which the possessor of land can and should anticipate that the dangerous condition will cause physical harm to the invitee notwithstanding its known or obvious danger. In such cases the possessor is not relieved of the duty of reasonable care which he owes to the invitee for his protection. This duty may require him to warn the invitee, or to take other reasonable steps to protect him, against the known or obvious condition or activity, if the possessor has reason to expect that the invitee will nevertheless suffer physical harm.

Conversely, comparative negligence is an affirmative defense. Michigan adopted this standard to promulgate a "fair system of apportionment of damages." See *Placek v Sterling Heights,* 405 Mich 638; 275 NW2d 511 (1979). Under this doctrine, a defendant may present evidence of a plaintiff's negligence in order to reduce liability. Before the adoption of comparative negligence, a plaintiff was wholly precluded from bringing a negligence action against a defendant if the plaintiff was contributorily negligent. Although the adoption of comparative negligence may have limited a defendant's defenses, the defendant's initial duty has not been altered.[12]

We find persuasive the analysis of the Illinois Supreme Court in *Ward v K mart Corp,* 136 Ill 2d 132; 554 NE2d 223 (1990). In *Ward,* the plaintiff sustained injuries when he walked into a concrete post, while leaving the defendant's department store. The Illinois Supreme Court reversed the judgment notwithstanding the jury's verdict for the defendant and found that the defendant's duty to exercise reasonable care extended to invitees even when the conditions are as obvious as a concrete post in the entryway.

Considering the plaintiff's negligence in relation to the defendant's duty, the *Ward* court held:

---

[12] Judge SAWYER's discussion of comparative negligence in his dissent in *Pressley v Bruce Post VFW Memorial Home, Inc,* 185 Mich App 709, 712-713; 462 NW2d 830 (1990) is helpful here. He states:

[C]omparative negligence does not itself directly involve issues of duty or breach of duty. Rather, it deals with the proper and just apportionment of fault, and responsibility, where both the plaintiff and the defendant are negligent. Comparative negligence does not, however, create negligence where none existed before that doctrine was adopted. That is, the adoption of comparative negligence did not create duties where none existed before.

We agree with plaintiff that the fact a person's injury resulted from his encountering a known or open and obvious condition on a defendant's premises is a proper factor to be considered in assessing the person's comparative negligence. It is unquestionably relevant to whether the injured party was exercising a reasonable degree of care for his own safety. And in this respect a plaintiff's own fault in encountering such a condition will not necessarily bar his recovery. As discussed below, however, we find that the obviousness of a condition is also relevant to the existence of a duty on the part of defendant.

Initially we reject plaintiff's argument that the adoption of comparative negligence in this State has affected the basic duty a landowner or occupier owes to entrants upon his land with respect to such conditions. Some courts and commentators have apparently embraced the position taken by plaintiff in this respect. . . . The primary justification for this approach is the proposition that a consequence of the adoption of comparative negligence is the elimination of those common law devices which act as absolute bars to recovery. We find this argument unpersuasive.

. . . In the present case, however, we are not so much concerned with the defenses available to defendant, but rather with the existence of a duty on the part of defendant in the first instance. In a common law negligence action, before a plaintiff's fault can be compared with that of the defendant, it obviously must first be determined that the defendant was negligent. It is fundamental tort law that before a defendant can be found to have been negligent, it must first be determined that the defendant owed a legal duty to the plaintiff. . . . We hold therefore that the adoption of comparative negligence in this State has no effect on the basic duty a defendant owes to a plaintiff. [*Id.* at 143-145.]

In light of the above discussion, we hold that the

"no duty to warn of open and obvious dangers"
rule remains viable in Michigan.

IV

On appeal, McLouth argued that the trial court
inappropriately instructed the jury pursuant to
SJI2d 19.03. The following instruction was given:[13]

> It is the duty of a possessor of premises *to
> exercise reasonable care for the protection of an
> invitee,* the status that Mr. Riddle had in this case.
> *The possessor must warn the invitee of dangers of
> which it knows or has created and must inspect
> the premises to discover possible dangerous condi-
> tions of which it does not know.* It must take
> reasonable precautions to protect the invitee from
> dangers that are foreseeable. *However, a possessor
> is not an insurer of the safety of an invitee, and
> his duty is only to exercise reasonable care for the
> invitee's protection.* The mere existence of a defect
> or danger is not enough to establish liability un-
> less it is shown to be of such character, or such
> duration that it would have been discovered by a
> reasonably careful person. [Emphasis added.][14]

[13] We believe an error occurred in the trial transcript. This jury
instruction represents the corrected version that closely tracks the
language found in SJI2d 19.03. Our decision today is based on this
corrected version. The original trial transcript reads as follows:

> It is the duty of a possessor of premises to exercise reason-
> able care for the protection of an invitee, the status that Mr.
> Riddle had in this case. The possessor must warn the invitee of
> dangers of which it knows or has created and must inspect the
> premises to discover *possible danger or conditions for which* it
> does not know. It must take reasonable precautions to protect
> the invitee from dangers that are foreseeable. However, a
> possessor is not an insurer of the safety of an invitee, and his
> duty is only to exercise reasonable care for the invitee's protec-
> tion. The mere existence of a defect or danger is not enough to
> establish liability unless it is shown to be such of a character,
> or such duration that it would have been discovered by a
> reasonably careful person. [Emphasis added.]

[14] This jury instruction is patterned after statements made by

Specifically, McLouth cites the trial court's statement that "[t]he possessor must warn the invitee of dangers of which it knows or has created . . . ." McLouth claims that this instruction left the jury with the impression that premises owners have an *absolute* duty to warn invitees of dangers which are known and obvious. We agree.[15] In light of Michigan's case law regarding a premises owner's duty to invitees, the trial judge incorrectly instructed the jury, leaving the impression that a premises owner's duty to warn an invitee of dangerous conditions on the premises is absolute and ever present. There is no dispute that the trial judge's charge to the jury must be considered as a whole. *Shreve v Leavitt*, 51 Mich App 235; 214 NW2d 739 (1974). Moreover, in reviewing jury instructions, this Court must ask "[d]id the instructions as given adequately inform the jury on the applicable law reflecting and reflected by the various evidentiary claims in the particular case?" *Huffman v First Baptist Church of Flushing*, 355

Professor Prosser, cited in *Kroll v Katz*, 374 Mich 364, 373; 132 NW2d 27 (1965), and *Wymer v Holmes*, 429 Mich 66, 71, n 1; 412 NW2d 213 (1987). Prosser, Torts (2d ed), p 459. To the extent that the premises in *Kroll* and *Wymer* contained hidden or latent dangerous conditions, these cases are factually distinguishable from the instant case.

15 On appeal, Riddle argued that McLouth failed to object to the giving of SJI2d 19.03 at trial and, in fact, requested this jury instruction, and that, therefore, its claim of error pertaining to the instruction is not preserved for appellate review.

Our decision to grant leave to appeal in a limited number of cases represents an effort to conserve scarce judicial resources. We are aware that appellate review of an error not properly preserved regarding jury instructions is generally foreclosed. MCR 2.516(C). However, where the defect in the jury instruction pertains "to basic and controlling issues in a case," this Court may conclude that review of an error to which no objection was raised is appropriate in order to avoid manifest injustice. *Hunt v Deming*, 375 Mich 581, 585; 134 NW2d 662 (1965). We strongly believe the Court's intervention here is appropriate to avoid prospective misapplication of duty/standard of care principles. The Court of Appeals articulated an improper conclusion of law, i.e., the abolition of the "no duty to warn of open and obvious dangers" rule in light of Michigan's adoption of comparative negligence, which demanded clarification by this Court.

Mich 437, 446; 94 NW2d 869 (1959). We have reviewed the jury instructions in their entirety and find them deficient in setting forth the appropriate duty of premises owners to invitees. Considered as a whole, the other qualifying language in the jury instruction is not sufficient to dispel the premise that this defendant, as a matter of law, should have warned Riddle of the slippery conditions of the coil field.

V

McLouth also claims that the jury instruction pursuant to SJI2d 12.05 constituted error requiring reversal.

The trial court instructed the jury as follows:

> The General Industry Safety Standard Commission has adopted certain regulations pursuant to an authority given to it by the State statute. Rule 15 on housekeeping of the General Industry Safety Standard Commission provides that the floor of the work area, passage way, or aisle shall be maintained in a manner that does not create a hazard and that is free of accumulation of scrap, debris, water, oil, or grease and other slip and trip hazards. That regulation also provides that where a wet process is used drainage shall be maintained, or false floors, platforms, or mats used.
>
> If you find that the Defendant violated this regulation before or at the time of the occurrence, such violation is evidence of negligence which you should consider together with all other evidence in deciding whether Plaintiff [sic] was negligent. If you find that the Defendant was negligent, you must then decide whether such negligence was a proximate cause of the injuries to Plaintiff.

McLouth contends that Riddle's theory of negligence did not include violation of a regulation and

thus McLouth was denied the opportunity to rebut an alleged violation at trial. However, the Court of Appeals concluded that the instruction was appropriate, given the circumstances of the case. 182 Mich App 266. We agree. The regulation requires employers to free business premises of dangers that may cause employees, or independent contractors, serious bodily injury. It is undisputed that Riddle was working as an independent contractor on McLouth's business premises when he sustained injuries. The Court of Appeals resolution of McLouth's second argument renders further discussion of SJI2d 12.05 unnecessary.

### CONCLUSION

The trial judge incorrectly instructed the jury with regard to the duty of a premises owner to invitees. The Court of Appeals mistakenly concluded that the "no duty to warn of open and obvious dangers" has been abolished in Michigan. The decision of the Court of Appeals is reversed, and the case is remanded for a new trial.

BRICKLEY, BOYLE, RILEY, and GRIFFIN, JJ., concurred with MALLETT, J.

LEVIN, J. (*dissenting*). Vance Riddle, a truck driver, was severely injured when he slipped and fell on oil that had dripped from steel coils stored in a "coil field" at a McLouth Steel Products Corporation plant. The issues tried to the jury were whether McLouth breached the standard of care to be observed by a premises owner to Riddle, an invitee, and whether any negligence of McLouth was a cause of Riddle's injury or, rather, whether Riddle's injury was due to Riddle's negligence in failing to take adequate precautions as he

walked through the coil field to avoid a danger that should have been known and obvious to him.

There was no issue concerning the sufficiency of the evidence of McLouth's fault, or of Riddle's possible contributory fault. The majority reverses the trial court and the Court of Appeals, stating that there was an instructional omission of such importance that a new trial is required even though the trial judge instructed in accordance with a standard jury instruction—clearly applicable on the facts of the case—and the omission found by this Court to be lurking in the instruction was not perceived by McLouth's counsel at the trial level. The omission was observed and asserted for the first time on appeal in the Court of Appeals. Even then the omission was not spelled out by McLouth as this Court expresses it. Nevertheless the majority concludes that the omission was of such significance that it would be manifestly unjust to allow the judgment for Riddle to stand.

A

The jury was instructed pursuant to SJI2d 19.03 that McLouth was under an obligation to warn Riddle of dangers of which McLouth knew or created. Since McLouth stored the steel coils in the coil field, and McLouth claims that the danger of oil dripping from the coils onto the coil field should have been known and obvious to Riddle, there clearly was ample evidence that McLouth, who stored the coils and thereby created the danger, both created and knew of the danger. The instruction was therefore clearly an appropriate instruction on the facts of this case. A failure to so

instruct should[1] have been error requiring reversal had the instruction been requested by Riddle and not given, and the verdict had been for McLouth.

B

The majority concludes that the judge erred reversibly in instructing the jury, in the language of SJI2d 19.03—an owner of premise " 'must warn the invitee of dangers of which it knows or has created' "—because the "instruction left the jury with the impression" that McLouth, as a premises owner, had "an *absolute* duty to warn invitees of dangers which are known and obvious"[2] to Mc-Louth even though the danger was also known and obvious to Riddle.

To be sure, the court did not qualify the statement that the possessor must warn the invitee of "dangers of which [it] knows or has created," by adverting to the possibility that a danger, known or created by McLouth, might have also been known and obvious to Riddle. It cannot properly be said, however, that because the judge did not advert to that possibility, he left the jury with the impression that McLouth had a duty to warn Riddle of dangers that were known and obvious to him.

McLouth did not object to the SJI2d 19.03 instruction on the basis that the instruction would

[1] Although this Court concludes that the omission in the instruction was manifestly unjust to McLouth, even though there was no request for the omitted language, a Court of Appeals panel, or even this Court, might have found that a failure to so instruct was harmless although duly requested by Riddle.

[2] *Ante,* p 101 (emphasis in original).

The opinion also states that the judge "incorrectly instructed the jury, leaving the impression that a premises owner's duty to warn an invitee . . . is absolute and ever present." *Id.* The opinion also states that the instructions were deficient "in setting forth the appropriate duty of premises owners to invitees." *Id.,* p 102.

leave the jury with the impression that it might
properly find for Riddle even if the danger was
known and obvious to him. Nor did McLouth
request that the jury be instructed that there is
"no duty to warn of open and obvious dangers."[3]

C

McLouth contended in its brief in the Court of
Appeals that the judge should have added that
"the duty to warn is not absolute, and the jury

[3] The only non-sᴊɪ instruction requested by McLouth regarding its
duty to Riddle is McLouth's request No. 32 which does not speak at
all concerning warnings—either a duty to warn, or not to warn:

> 32. It was the duty of the possessor of the premises to
> maintain its premises in a reasonably safe condition and of
> exercising due care to prevent and to obviate the existence of a
> situation, known to it or that should have been known, that
> might result in injury. *Beals v Walker,* 416 Mich 469; 331
> NW2d 700 (1982).
> SJI2d 19.03. The possessor must take reasonable precautions
> to protect the invitee from dangers that are foreseeable. How-
> ever, the possessor is not an insurer of the safety of an invitee,
> and its duty is only to exercise reasonable care for an invitee's
> protection.

The *second paragraph* of requested instruction 32 consists of two
sentences taken from SJI2d 19.03. (See *ante,* p 100, for text of SJI2d
19.03 as slightly modified by the judge.) The first sentence of the
second paragraph is the last sentence of the first paragraph of SJI2d
19.03, and the second sentence of the second paragraph is the first
sentence of the second paragraph of SJI2d 19.03.

The *first paragraph* of requested instruction 32 states that it is the
duty of the possessor of premises

> —"to maintain its premises in a reasonably safe condition";
> —to exercise "due care to prevent and to obviate the exis-
> tence of a situation, known to it or that should have been
> known, that might result in injury."

The circuit judge more than adequately, and accurately, stated
those concepts when he instructed the jury in accordance with SJI2d
19.03 as set forth in the first three sentences of the instruction he
gave. (See *ante,* p 100.)

should have been advised that *there are situations where a failure of a premises owner to warn an invitee of known hazards will not result in the liability of the land owner.*" (Emphasis added.)

The Court of Appeals, ignoring that McLouth had not sought to have the jury advised of the abstraction set forth in McLouth's brief on appeal, held that the adoption of comparative negligence superseded any need to instruct on invitee negligence in ignoring a known and obvious danger.[4] This Court concludes that the Court of Appeals erred in holding that the adoption of comparative negligence superseded any need to so instruct, and remands for a new trial.

There is no need, however, to commit error to correct the asserted error of the Court of Appeals. Even if the Court of Appeals erred concerning the effect of the adoption of comparative negligence on any need to instruct concerning an open and obvious danger,[5] a new trial is not justified absent objection *and proffer of a correct instruction,* or a basis for finding that a manifest injustice resulted from failing to add to SJI2d 19.03 the language this Court today finds to be necessary.

---

[4] The Court of Appeals said:

> With the adoption of pure comparative negligence, the Supreme Court has attempted to enact a fair system of apportionment of damages, distributing responsibility according to the fault of the parties. *Placek v City of Sterling Heights,* 405 Mich 638; 275 NW2d 511 (1979), reh den 406 Mich 1119 (1979). Thus, it becomes necessary to reëxamine the no-duty rule. Courts in other jurisdictions have done so and concluded that adoption of comparative negligence requires abolition of the no-duty rule. *Parker v Highland Park, Inc,* 565 SW2d 512 (Tex, 1978); *Woolston v Wells,* 297 Or 548; 687 P2d 144 (1984); *Cox v J C Penney Co, Inc,* 741 SW2d 28 (Mo, 1987); *Harrison v Taylor,* 115 Idaho 588; 768 P2d 1321 (1989). See also 35 ALR3d 230. [182 Mich App 259, 265; 451 NW2d 590 (1990).]

[5] Whether it so erred depends on how one defines the asserted "duty." See part IV.

### I

McLouth submitted a requested instruction No. 32[6] that avoided any reference to the obligation of a possessor of land to warn an invitee of dangers of which it knew or had created. As previously stated, Riddle was entitled to such an instruction, and a failure to so instruct should have been error requiring reversal.[7] Requested instruction No. 32 thus was not a correct instruction because the judge was required to instruct the jury that McLouth was obliged to warn Riddle of the danger that it had created and of which it knew.

### A

Even if one accepts the majority's premise that the SJI2d 19.03 instruction was deficient in failing to add that McLouth was not under an obligation to warn of dangers known and obvious to Riddle, such an added instruction would not be accurate unless it included the concepts that the danger was known or obvious to Riddle only if the jury so finds, and that, even if the jury so finds, McLouth might nevertheless be subject to liability to Riddle if the jury also finds that McLouth should have anticipated the harm despite such knowledge and obviousness.[8]

### B

When McLouth submitted requested instruction 32, the judge said he would make one modification

---

[6] See n 2 for text.

[7] See part A preceding n 1.

[8] See n 24 and accompanying text.

in SJI2d 19.03.[9] McLouth's counsel did not further object when the judge indicated that SJI2d 19.03 would be given instead of requested instruction No. 32.[10] Express objections were made by both counsel to other instructions.[11]

McLouth's counsel did not urge at any time before or after the judge instructed the jury that instructing concerning McLouth's obligation to warn of dangers which McLouth knew or had created would leave the jury with the counter-intuitive impression that the jury might properly hold McLouth subject to liability for failing to warn Riddle of a danger so well known and obvious that there was no need for a warning.

C

Mere submission of alternative instruction No. 32 did not suffice as an objection. Instruction No. 32 was incorrect in that it omitted the correct SJI2d 19.03 statement, to which Riddle was entitled, that "the possessor . . . must warn the invitee of dangers of which [it] knows or has created . . . ."

---

[9] The judge stated his intention to modify one word in the first sentence of SJI2d 19.03:

> *Court:* This particular problem that I have had I think can be corrected. *Instead of saying it was the duty of* the *possessor of the land to exercise reasonable care, to say a possessor . . . has the duty to exercise reasonable care* for the protection of an invitee, he or it must warn the invitee of dangers. That puts it in the abstract, which a jury instruction is supposed to be. Give the Abstract Rule of Law and it's for the jury to decide whether that's been fulfilled in this case. [Emphasis added.]

[10] After instructing and then excusing the jury, the judge asked whether there were any objections. McLouth's counsel stated that he had "[n]o additional objections other than what I may have stated previously."

[11] There were at least six specific objections or requests for withdrawal of instructions made by the parties.

Even if requested instruction No. 32 had stated, as this Court now states the jury should have been instructed, that, while a premises owner is obliged to warn an invitee of dangers of which it knows or has created, there is no "absolute duty to warn invitees of dangers which are known and obvious" to the invitee, the instruction would still have been incorrect and the judge would thus not have been obliged to give the instruction unless the requested instruction included the concepts that (i) it was for the jury to find whether the danger was known or obvious to Riddle, and (ii) even if the jury found for McLouth with respect to (i), McLouth might still be subject to liability if the jury found that McLouth should have anticipated the harm despite such knowledge and obviousness.

D

The mere submission of requested instruction No. 32, did not constitute the specific objection contemplated by MCR 2.516(C).[12]

The rule is well settled that to preserve a claim

---

[12] MCR 2.516(C) provides:

A party may assign as error the giving of or the failure to give an instruction only if the party objects on the record before the jury retires to consider the verdict (or, in the case of instructions given after deliberations have begun, before the jury resumes deliberations), stating specifically the matter to which the party objects and the grounds for the objection. Opportunity must be given to make the objection out of the hearing of the jury.

The essence of this rule is stated in the traditional formula: " 'no objection—no ruling—no error presented.' " *Taylor v Lowe,* 372 Mich 282, 283; 126 NW2d 104 (1964).

See also 2 Honigman & Hawkins, Michigan Court Rules Annotated (2d ed), ch 50, rule 516, pp 560-567.

In *Rehak v City of Joliet,* 52 Ill App 3d 724, 726; 367 NE2d 1071 (1977), the court pertinently observed:

With respect to the instructional issue, the plaintiff at the

of error in jury instructions for appellate review, an objection must be made before the jury begins its deliberations,[13] and the basis for the claim of error should be stated with *specificity*.[14]

---

conference on instructions tendered her instruction number 12 which is IPI 10.04. . . . The only objection interposed to this instruction was the observation by defense counsel "This instruction should not be used because 140.01 should be used . . . . Therefore, I feel this instruction should not be given." The next instruction, plaintiff's number 13, was tendered and given by the court without objection by defendant. . . .

In its reply brief the City concedes its quoted objection to the giving of instruction number 12 is "obscure." Since IPI 140.01 was given thereafter without objection, the record at the instruction conference fails to disclose any reasons required by Supreme Court Rule 239(b) . . . for the impropriety of the instruction.

See also n 16.

[13] This Court described the procedure contemplated for objecting to jury instructions in *Hunt v Deming,* 375 Mich 581, 584-585; 134 NW2d 662 (1965):

Counsel may submit requests for instructions to the trial judge at or before the close of evidence and the trial judge is required to inform counsel of his action upon their requests prior to their arguments to the jury. . . . At the conclusion of the charge, the trial judge should excuse the jury and *then* give counsel an opportunity to make on the record such objections to the charge as they may have. . . . When counsel have completed their statements of objections, the jury should be recalled for further instruction when necessary and for direction by the trial judge to retire for deliberation upon its verdict. Only if such procedure is followed by court and counsel can the rights of all parties properly be protected and objections to erroneous jury instructions assuredly be saved for appellate review. [Emphasis in original.]

See also *Gilson v Bronkhorst,* 353 Mich 148, 160, n *; 90 NW2d 701 (1958).

[14] Merely voicing exception, without explanation, does not adequately preserve an exception. In *Pray v Cadwell,* 50 Mich 222, 223; 15 NW 92 (1883), in the midst of deliberations, the jury sent a question to the judge, who then brought the jury into court and answered the question; defense counsel then took exception to the "instruction." In explaining that the exception was insufficient, Chief Justice GRAVES said:

Responsibility for detecting and correcting error is shared by the court and counsel. The interest in conserving judicial resources[15] requires that the

> There was no exception to the form of the proceeding, nor any request for any other or different instruction on the subject mentioned by the jury, nor any suggestion to have the jury recalled for the purpose of explanation, nor any intimation that they were either misapprehended or were laboring under misapprehension, nor any error pointed out by the exception.

See also *United Ins Co of America v Ray,* 275 Ala 411, 414; 155 So 2d 514 (1963).

An objection was found to be not sufficiently specific in *Wanner v Mears,* 102 Mich 554, 557; 61 NW 2 (1894), where the defendant claimed that " '[t]he circuit judge erred in charging the jury and in giving the requests for plaintiff found on pages 134-140 of record.' "

The Court refused to consider the claim of error, saying:

> Evidently this assignment relates to all the pages from 134 to 139, inclusive; but these pages contain many statements by the court in which the law is correctly stated, whatever may be said of some of them. It is too well settled that such an assignment cannot be considered to need comment here. [*Id.*]

Other jurisdictions have made comparable pronouncements regarding preservation of instructional errors. Merely submitting proposed instructions does not necessarily state or preserve an objection:

> The submission of proposed instructions by counsel does not relieve the parties in an instruction conference from calling the court's attention by objection to any omission or misstatement in the instructions given by the court. In most instances the trial court covers the substance of proper submitted instructions in those given by it. The purpose of the instruction conference is to give the trial court an opportunity to correct any errors being made by it. Consequently, the parties should object to any errors of commission or omission. [*Haumont v Alexander,* 190 Neb 637, 641; 211 NW2d 119 (1973).]

See also *Stuckey v Union Mortgage & Investment Co,* 383 SW2d 429, 437 (Tex Civ App, 1964).

[15] This Court has stated that it will review unpreserved instructional errors only when necessary to prevent manifest injustice:

> This is not to say that this Court may not, *in unusual circumstances, and to prevent manifest injustice,* take note of instructions which err with respect to basic and controlling issues in a case even though objection thereto was not made before the jury retired. . . . It is to say, however, that *the*

trial judge should be provided the opportunity to correct an inaccurate instruction before submitting the case to the jury.[16] It is more efficient to prevent instructional deficiency than to look to the appellate courts to correct the deficiency by remanding for another trial.

The interests of "judicial economy" are best served by requiring counsel to preserve objections to instructions specifically. Otherwise counsel

*Court will exercise its discretion in this fashion but sparingly.* To do otherwise would be to encourage counsel to maintain silence in the face of correctable erroneous instructions, hoarding their objections for use in the event of an unfavorable jury verdict. *The course of expeditious justice is furthered by requiring that such objections be made while time yet remains to set the record straight.* [*Hunt v Deming,* n 13 *supra,* p 585. Emphasis added.]

[16] In determining whether an alleged deficiency requires reversal or was harmless, the Court will give some weight to the attitude of counsel toward instructions at the time they were given.

Surely, and if counsel had then attributed to the criticized words of instruction . . . the prejudicial effect he now urges with respect thereto, it is fair to assume that he would have called the judge's attention to such words, in open court or at chambers, in order that opportunity for corrective instruction be given. [*Gilson v Bronkhorst,* n 13 *supra,* p 159.]

With respect to the attitude of counsel, the Court said:

We do suggest, following *Labar* [*v Crane,* 56 Mich 585; 23 NW 323 (1885)], *Robertson* [*v Hayes,* 261 Mich 200; 246 NW 69 (1933)], and *Kaminski* [*v Grand Trunk R Co,* 347 Mich 417; 79 NW2d 899 (1956)], that counsel will do well—preferably at chambers after the jury has retired—to call up for immediate repair as indicated any apparent inadvertence or possibly confusing ambiguity of language the trial judge has isolatedly employed. *We judge the importance of errors of such nature, and their consequent effect as being either reversible or harmless, in part by the attitude of counsel toward same when time yet remains to set things right in the jury room.* [*Id.,* p 160, n *. Emphasis added.]

See also *Kaminski, supra,* pp 428-429; *Springer v Fuller,* 196 Mich 628, 633; 162 NW 973 (1917); *Pray v Cadwell,* n 14 *supra,* pp 223-224.

could remain silent in the face of deficiencies that are correctable before the case goes to the jury.[17]

## II

It is well established that an appellate court will reverse for unpreserved instructional deficiencies only when necessary to prevent manifest injustice.[18]

The majority concludes that "the Court's intervention here is appropriate."[19] Assuming arguendo that the jury instructions were "deficient in setting forth the appropriate duty of premises owners to invitees,"[20] the instruction, read as a whole, in relation to the theories of the parties, did not cause manifest injustice.

Riddle's theory of the case was that McLouth created an unreasonable risk of harm by allowing

[17] See *Hunt,* n 13 *supra;* see also *Taylor v Lowe,* n 12 *supra; Moskalik v Dunn,* 392 Mich 583; 221 NW2d 313 (1974).

[18] *Hunt,* n 13 *supra,* p 585.

A jury instruction need not be perfect, but must allow the jury to consider fairly the theories of the parties. *Springer v Fuller,* n 16 *supra; Huffman v First Baptist Church,* 355 Mich 437; 94 NW2d 869 (1959); *Solomon v Shuell,* 435 Mich 104, 137; 457 NW2d 669 (1990). In *Huffman,* Justice VOELKER stated:

> [T]he job of an appellate court in appraising jury instructions . . . is not to determine whether we would select his instructions as models of literary excellence and pearls of legal wisdom were we editing a form book on the subject; rather our role is mercifully more limited and our test less severe, namely: Did the instructions as given adequately inform the jury on the applicable law reflecting and reflected by the various evidentiary claims in the particular case? In other words, in the idiom of the day, we simply ask ourselves: Were the instructions understandable and did they give both sides a "fair shake"? We must not also demand the subtle reasoning of a Socrates or the gem-like prose of a Walter Pater. Few jury verdicts anywhere would stand if that were the criterion. [*Id.,* p 446. Emphasis added.]

[19] *Ante,* p 101, n 15.

[20] *Ante,* p 102.

oil to accumulate on the floor of the coil field, and by failing to take reasonable steps to remove the risk by cleaning up the oil. Riddle contended that McLouth failed to exercise reasonable care to guard against Riddle encountering the danger in that McLouth did not inspect the floor of the coil field, warn Riddle of the presence of oil, or designate a safe path around the dangerous area.

McLouth contended that it exercised reasonable care for Riddle's safety by providing a safe walkway around the coil field, and that Riddle was injured because, in deciding to walk through the coil field, although he knew of the oily condition, he failed to exercise reasonable care for his own safety.

SJI2d 19.03 was given in a context in which it was made clear that it was for the jury to decide what McLouth should have done to discharge its obligation to keep the premises safe for invitees.

Having in mind the theories of the parties presented by the court to the jury, the single reference concerning McLouth's obligation to warn did not result in manifest injustice to McLouth.

The judge instructed the jury on McLouth's theory that Riddle "knew or should have known the coil field contains oil," and that Riddle "disregarded his prior knowledge," and that Riddle "knew or should have known that in using ordinary care of the existence of oil in the coil field," and "that was negligence on his part." The judge also instructed the jury regarding contributory negligence and comparative negligence.

Read as a whole, the instructions cannot properly be said, in the absence of objection, to have left the jury with the impression that McLouth had a duty to warn Riddle of dangers that were known and obvious to Riddle.

The jury apportioned the fault of the parties. It

found Riddle to have been thirty percent at fault.
It follows that the jurors concluded that Riddle's
injuries were caused in part by his own negligence.

The gravamen of McLouth's appellate claims is
that Riddle's knowledge of oily conditions in the
coil field made the danger open and obvious to
him, and thus eliminated any obligation on the
part of McLouth to warn him. The only explana-
tion for the jury finding Riddle comparatively
negligent was that his knowledge of plant condi-
tions made his decision to walk through the coil
field unreasonable.

The jury thus did in fact accept the proposition
McLouth succeeds in urging on appeal, that Mc-
Louth did not have an absolute duty to warn
Riddle of the dangerous condition in the area
through which he walked.

III

The majority does not state, in so many words,
that the instructional deficiency was the failure to
state—as part of SJI2d 19.03 or as a supplement
thereto—that there is "no duty to warn of open
and obvious dangers." But the opinion of the Court
assuredly will be so read in light of the nine pages
of discussion,[21] which concludes, immediately be-
fore the discussion of the asserted deficiency, with
the words: "[i]n light of the above discussion, we
*hold* that the 'no duty to warn of open and obvious
dangers' rule remains viable in Michigan."[22] (Em-
phasis added.) Manifestly, the opinion of the Court
is saying that SJI2d 19.03 is deficient in failing to
state that there is "no duty to warn of open and
obvious dangers."

No doubt the standard civil jury instruction

[21] *Ante,* pp 90-99.
[22] *Ante,* pp 99-100.

committee will revise the instruction in accordance with the opinion of the Court. It is to be hoped that it will understand that it should avoid the use of the word "duty"—there is no duty issue, rather only a standard of care issue.[23]

Further, if a no duty to warn of known and obvious danger instruction should be given, it should be a balanced instruction, one that states not only that there is no obligation to warn of open or obvious dangers, but also the further qualification, set forth in the Restatement, "unless the possessor should anticipate the harm despite such knowledge or obviousness."[24]

The Restatement formulation appears to be well supported in the cases. Prosser & Keeton, Torts (5th ed), § 61, p 427, reports that while "in the usual case, there is no obligation to protect the invitee against dangers which are known to him, or which are so obvious and apparent that he may reasonably be expected to discover them," "something more in the way of precautions may be required" notwithstanding the invitee's "knowledge, warning, or the obvious nature of the condition." Among the particularized instances where "something more" may be required, are situations where there is reason to expect that "after a lapse of time [the invitee] may forget the existence of

[23] McLouth clearly owed a duty to Riddle arising out of their relationship—McLouth as a possessor of land, and Riddle as an invitee. The question whether McLouth was obliged to warn an invitee of an "open and obvious danger" concerns an application to specific facts of the standard of care.

[24] As set forth in the opinion of the Court, *ante,* p 94, the entire concept is set forth in 2 Restatement Torts, 2d, § 343A(1) as follows:

A possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness.

the condition, even though he has discovered it or
been warned."

IV

The origin of the "no-duty" rule is unclear. It
may be a vestige of common-law contributory neg-
ligence theory and obsolete status definitions.
When contributory negligence was an absolute bar
to recovery by a negligent plaintiff, courts ex-
pressed in terms of the so-called no-duty rule the
conclusion that, in certain situations, the plaintiff
was contributorily negligent.[25]

An invitor owes an invitee a duty to exercise
reasonable care to make the premises safe for his

---

[25] At common law there was no separate class of "invitee." "Busi-
ness visitors" and "gratuitous licensees" were classed together as
"licensees." The first Restatement of Torts, § 340, stated that a
"licensee's" knowledge of a dangerous condition on premises absolved
the possessor of any liability:

A possessor of land is not subject to liability to his *licensees,
whether business visitors or gratuitous licensees,* for bodily
harm caused to them by any dangerous condition thereon,
whether natural or artificial, if they know of the condition and
realize the risk involved therein. [2 Restatement Torts, § 340.
Emphasis added.]

It thus appears that, depending on the facts and circumstances, there
might be an obligation to warn invitees of known and obvious dan-
gers.

The second Restatement of Torts added the classification of "invi-
tee" which included "business visitors" and employees, omitted § 340,
and added § 343A to address expressly the obligations of the invitor
arising from the invitor-invitee relationship concerning known or
obvious dangers:

A possessor of land is not liable to his invitees for physical
harm caused to them by any activity or condition on the land
whose danger is known or obvious to them, unless the possessor
should anticipate the harm despite such knowledge or obvious-
ness. [2 Restatement Torts, 2d, § 343A(1). In this context, it is
contemplated that there might be a duty to warn "invitees" of
open and obvious dangers.]

entry and use.[26] Where the danger is open or obvious, reasonable care on the part of the invitor

> does not ordinarily require precautions, or even warning, against dangers which are known to the visitor, or so obvious to him that he may be expected to discover them. . . .
>
> There are, however, cases in which the possessor of land can and should anticipate that the dangerous condition will cause physical harm to the invitee notwithstanding its known or obvious danger. In such cases the possessor is not relieved of the duty of reasonable care which he owes to the invitee for his protection. *This duty may require him to warn the invitee, or to take other reasonable steps* to protect him, against the known or obvious condition or activity, if the possessor has reason to expect that the invitee will nevertheless suffer physical harm. [2 Restatement Torts, 2d, § 343A, comments e and f. Emphasis added.][27]

Because an invitor undeniably owes an invitee a duty to keep premises reasonably safe, the "no *duty* to warn" rule cannot be unconditionally true. An invitor would surely be subject to liability to an invitee for harm resulting from an egregiously dangerous condition even though the invitor made a concerted effort to publicize the risk. The invitor would not necessarily be absolved of liability simply because he had provided a warning. The "no duty to warn rule," in the context of invitor-invitees assumes that the obvious danger continues to be extant after the invitor has taken reason-

---

[26] See 2 Restatement Torts, 2d, § 343; *Quinlivan v Great Atlantic & Pacific Tea Co,* 395 Mich 244, 261; 235 NW2d 732 (1975); *Nezworski v Mazanec,* 301 Mich 43, 60; 2 NW2d 912 (1942).

[27] The Reporter's Notes to § 343A employ four groups of cases to illustrate how an invitee's knowledge of a danger might not protect him from harm. The cases cited concern distracted attention, forgetfulness, arms full of bundles, or reasonable conduct in light of the known or obvious danger on the part of the invitee.

able steps to make the premises safe. In such a case, the obvious danger would not generally pose an "unreasonable" risk to invitees, and the invitor would not be subject to liability unless there were other reasons to expect that invitees would still be harmed.[28]

Whether an invitor is negligent because he fails to warn an invitee of an open and obvious danger is a question of the standard of care required in a given set of circumstances, rather than a question of duty. The confusion concerning this aspect of the matter stems from the tendency to analyze virtually every aspect of negligence in terms of "duty."

"Duty" refers, strictly speaking, to a legally recognized obligation to observe or conform to some particular standard of conduct toward another.[29] Courts developed the concept of "duty" as comprehending a specific relationship between a plaintiff and defendant, absent which no liability to observe any standard of conduct arises.[30] Courts have also spoken in terms of "duty," however, to address questions relating to "standard of care" (the particular conduct required to discharge a legally recognized obligation), and even questions relating to "proximate cause."[31]

---

[28] See 2 Restatement Torts, 2d, § 343A, and 5 Harper & James, Torts, § 27.13, pp 242-252.

[29] Prosser & Keeton, Torts (5th ed), § 53, p 356.

[30] The origin of "duty" has been traced to three English cases decided in the nineteenth century. See Prosser & Keeton, *supra,* p 357 and n 8.

[31] A "standard of care" could be described in terms of "duty" by saying that a driver approaching an intersection has a duty to slow down and keep a proper lookout. A "proximate cause" determination could be expressed in terms of "duty" by saying that a driver approaching an intersection has no duty to take precautions against a water main break which forces him off the road and into someone's yard; the essence of the determination is that the driver's conduct was not the proximate cause of damage to the property. See Prosser & Keeton, *supra,* p 356.

"Duty" thus is used equivocally in judicial opinions. If "duty" is understood to refer, as in the traditional sense, to the relationship necessary to give rise to an obligation to observe some standard of care, then it follows analytically that the adoption of comparative negligence could not supersede the need to determine, as a matter of law, that a particular defendant did or did not owe a particular plaintiff a "duty," because the application of principles of "comparative negligence" assumes the breach of a duty. Plaintiff's comparative negligence could not relieve the defendant of his duty because plaintiff's comparative negligence merely shifts to the plaintiff the burden of sharing with the defendant the loss or damages resulting both from defendant's breach of duty in violation of the standard of care and plaintiff's contributory negligence.

Thus, where it is said that "no duty" is owed by a particular defendant, in the sense that negligence or fault of the plaintiff contributed to the harm in a particular instance, or that a danger is open and obvious because of the plaintiff's subjective knowledge of the danger, comparative negligence would indeed abrogate the "no duty" rule because a plaintiff's contributory negligence does not bar recovery and a decision to encounter a dangerous condition despite subjective knowledge of the peril is relevant in deciding the extent of the plaintiff's negligence. Application of comparative negligence principles would then call for the jury to apportion fault between the parties.

It is evident that standard of care, not duty, lies at the heart of the present dispute.[32] The no-duty rule does not exhaust the obligations of invitor to an invitee. It is possible that an invitor would be

[32] The majority and we are in agreement. See *ante*, p 97, n 11, and accompanying text.

negligent although having no obligation to warn of
an open and obvious danger, because he might still
have been negligent in failing to inspect or repair
the premises to make them safe for invitees.[33]

V

The following propositions are central to the
majority's discussion of the law governing a prem-
ises owner's obligation to invitees:

[33] See *Quinlivan,* n 26 *supra,* p 261.

Although 2 Restatement Torts, 2d, § 343A(1), n 25 *supra,* expresses
the principle that the open and obvious character of a danger does
not absolutely immunize a premises owner from liability for harm
caused by the danger, and is consonant with the verdict in the instant
case, the same result would be reached under § 343, which provides:

A possessor of land is subject to liability for physical harm
caused to his invitees by a condition on the land if, but only if,
he (a) knows or by the exercise of reasonable care would
discover the condition, and should realize that it involves an
unreasonable risk of harm to such invitees, and (b) should
expect that they will not discover or realize the danger, or will
fail to protect themselves against it, and (c) fails to exercise
reasonable care to protect them against the danger.

See, e.g., *Spear v Wineman,* 335 Mich 287; 55 NW2d 833 (1952)
(under 2 Restatement Torts, 2d, § 343, it is for the jury to decide the
question of contributory negligence where a plaintiff-customer is
injured when hit by a wind-blown door of the store where she was
shopping).

In the instant case, there was evidence that workers commonly
used the coil field as a shortcut to reach plant offices, and that a
warning would likely have been ignored. A jury might conclude that
McLouth was subject to liability despite the "obviousness" of the
danger in the coil field, on the ground that it should have expected
that the workers would not realize the danger or would fail to protect
themselves against it, § 343(b).

In *addressing the obligations of an invitor to invitees regarding
accumulations of ice and snow the Court said:*

[W]e reject the prominently cited notion that ice and snow
hazards are obvious to all and therefore may not give rise to
liability. While the invitor is not an absolute insurer of the
safety of the invitee, the *invitor has a duty to exercise reason-
able care to diminish the hazards of ice and snow accumula-
tion.* [*Quinlivan,* n 26 *supra,* p 261. Emphasis added.]

—"[A] premises owner's duty to warn extends to hidden or latent defects."[34]

—"[I]f the dangers are known or obvious to the invitee, no absolute duty to warn exists, and the invitee cannot recover on that theory."[35]

—"While the jury may conclude that the duty to exercise due care requires the premises owner to warn of a dangerous condition, there is no absolute duty to warn invitees of known or obvious dangers."[36]

These statements, while accurate in themselves, do not yield the conclusion in support of which the majority opinion is likely to be read:

—"In light of the above discussion, we hold that the 'no duty to warn of open and obvious dangers' rule remains viable in Michigan."[37]

### A

We agree with the majority that a premises owner is obliged to warn an invitee of hidden or latent dangers.[38] We also agree that where the

---

[34] *Ante,* p 91.

[35] *Id.,* p 92.

[36] *Id.,* p 97.

[37] *Id.,* pp 99-100.

[38] The passages quoted by the majority imply that an owner's duty to warn extends *only* to hidden dangers. The majority quotes from *Samuelson v Cleveland Iron Mining Co,* 49 Mich 164, 170; 13 NW 499 (1882):

"Every man who expressly or by implication invites others to come upon his premises, *assumes to all who accept the invitation the duty to warn them of any danger* in coming, which he knows of or ought to know of, and *of which they are not aware.*" [Emphasis added. *Ante,* p 91.]

The majority also quotes from *Caniff v Blanchard Navigation Co*, 66 Mich 638, 647; 33 NW 744 (1887):

> "The *occupier of premises, no doubt, is bound*, as to persons thereon by his express or implied invitation, *to keep the premises free from, or give a warning of, danger known to him and unknown to the visitor. But this rule has no application to a case where a person who from his experience* . . . *knows that it is customary to leave the hatchways of vessels open while lying in port* . . . *and are sources of danger which he must avoid at his peril.*" [Emphasis added. *Ante*, pp 91-92.]

In both *Samuelson* and *Caniff* the premises owners were absolved of liability because of the open and obvious character of the dangers involved. These nineteenth century cases do not adequately address the interplay between the duty imposed on the premises owners and the status of plaintiffs. The results in these cases might be different if considered today. At the time these cases were written, employees were classed as "licensees." Subsequently, employees were accorded the status of "invitees" and were owed a higher degree of care.

In *Caniff*, the Court rejected the plaintiff's claim that he was present on the ship as a "licensee," because

> [t]he ship-keeper was not authorized to invite him on board, and he did not represent the owner in calling to him to come forward . . . . The ship-keeper was not acting in the line of his duty, but in violation of his positive orders. [*Id.,* p 645.]

The Court thus intimated that plaintiff was a trespasser. Further, the passage quoted by the majority occurred in the context of the Court's remark:

> Whether he was rightfully on or not, his own negligence contributed to the injury. . . . With all this knowledge and experience on the part of the plaintiff, he walks carelessly forward in the dark . . . . This, under the circumstances, was inexcusable negligence on his part, and a disregard of all that his knowledge and experience had or should have taught him. [*Id.,* p 646.]

The Court was clearly applying traditional principles of *contributory negligence* to bar any recovery by the plaintiff. *Caniff* thus illustrates the use of "duty"/"no duty" as a proxy for facts strong enough either to bar recovery as a matter of law under traditional contributory negligence doctrine, or that the absence of a warning would not have been a proximate cause of plaintiff's injuries (because he probably would have ignored a warning anyway).

The majority also relies on *Nezworski v Mazanec*, n 26 *supra*, p 61, for the rule:

> "If there were hidden dangers in connection with the door-

danger is known or obvious to an invitee, the premises owner has no *absolute* obligation to warn,[39] and the question is then one of due care, and the jury might find that a warning was appropriate under the particular circumstances of the case.

### B

The majority's discussion of the law concerning a premises owner's obligation to warn in respect of open and obvious dangers does not support the unconditional statement that there is "no duty to warn of open and obvious dangers." The scope of a premises owner's obligation to warn is not limited by the majority to only hidden or latent dangers. The majority acknowledges that in particular circumstances a premises owner might be obliged to warn of a danger although it is open and obvious.

The majority's analysis supports at most a holding that there is "no *absolute* duty to warn of open and obvious dangers," or, equivalently, that there is "no duty to warn of open and obvious dangers unless the premises owner should anticipate that harm will result despite the open and obvious character of the danger."

## CAVANAGH, C.J., concurred with LEVIN, J.

way, platform, stairway, and alley, it was [the premises owner's] duty to give warning thereof." [*Ante,* p 92.]

*Nezworski* concerned a plaintiff who suffered injuries from a fall down the stairway leading to the basement of a restaurant. This Court affirmed a verdict in favor of plaintiff. The remark quoted by the majority was made in the course of rejecting the defendant's claim that he was not chargeable with knowledge of the condition of the premises, and therefore owed no obligation to warn of dangerous conditions. The defendant *did not claim* that he owed the plaintiff "no duty to warn" because the danger was obvious to the plaintiff.

[39] Riddle did not claim that McLouth had an *absolute* obligation to warn him of the dangerous condition of the floor of the coil field.