96 F.3d 1448
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Bruce LIPHARD and Tammy Liphard, Plaintiffs-Appellants,
v.
DOVER ELEVATOR COMPANY, Defendant-Appellee.
 No. 95-1707.
 United States Court of Appeals, Sixth Circuit.
 Sept. 5, 1996.
 
 Before: CONTIE, BOGGS, and NORRIS, Circuit Judges
 PER CURIAM.
 
 
 1
 Bruce and Tammy Liphard appeal the district court's summary judgment disposition of their personal injury action against the Dover Elevator Company. We affirm.
 
 I.
 
 2
 On March 20, 1991, the City of Midland (Michigan) hired Gerace Construction Company ("Gerace") to construct a senior citizen housing complex, Riverside Place, in Midland. Gerace, in turn, hired defendant-appellee Dover Elevator Company ("Dover") to install the elevators.
 
 
 3
 On or about May 1, 1992, plaintiff-appellant Bruce Liphard ("Liphard"), an iron worker and certified welder, began working for Gerace on the Riverside Place project. On July 21, 1992, Gerace's project superintendent, David Haskin, instructed Liphard to weld flat bar extenders to the sill angles on the inside of the second elevator shaft to close the gaps between the elevator floor and the floors of the building. Haskin and Gerace's project manager, Jesse Fitzgibbon, concede that, pursuant to contract, Gerace was responsible for installing the sill angles and the flat bar extenders in the elevator shafts.
 
 
 4
 The record reveals that the workers were under some time pressure to complete the project due to a work stoppage that had resulted from a labor dispute. In an attempt to save the time and expense of installing a scaffold in the elevator shaft, Gerace and Dover agreed that Liphard would use the elevator platform to reach the areas in the elevator shaft where the work was to be done. One of Dover's employees, Dan Butcher, operated the platform for Liphard.
 
 
 5
 When Liphard and Butcher went onto the elevator platform inside the elevator shaft, they noticed pieces of block and mortar falling from above. After taking the elevator platform up to the top of the elevator shaft, Liphard found two masons "blocking in" the elevator shaft. Though Liphard told the masons that they couldn't work there because he was working below them, the masons, citing time pressures, refused to stop working. Notwithstanding the obvious danger, Liphard continued to work below the masons in the elevator shaft.
 
 
 6
 Approximately two and one-half hours later, a piece of concrete fell down the elevator shaft from the fifth floor where the masons were working and struck Liphard as he welded between the second and third floors. Though the impact momentarily dazed Liphard and drove him to his knees, he was able to complete his work shift. Liphard's condition worsened that evening. Liphard's treating physician now considers Liphard to be totally and permanently disabled.
 
 
 7
 The Liphards subsequently filed a two-count complaint against Dover alleging that Dover breached its duty to provide Bruce Liphard with a safe place to work.[1] Following discovery, Dover moved for summary judgment. On June 2, 1995, the district court granted Dover's motion for summary judgment. On June 22, 1995, the Liphards filed their timely notice of appeal.
 
 II.
 Standard of Review
 
 8
 Summary judgment is appropriate where "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). We review a district court's grant of summary judgment de novo. Pinney Dock & Transp. Co. v. Penn Cent. Corp., 838 F.2d 1445, 1472 (6th Cir.), cert. denied, 488 U.S. 880 (1988).
 
 The Liphards' Claim
 
 9
 The appellants assert that Liphard worked for Dover the day he was injured. Because employers must "[f]urnish to each employee, employment and a place of employment which is free from recognized hazards that are causing, or are likely to cause, death or serious physical harm to the employee," Mich.Comp.Laws § 408.1011(1)(a), the appellants argue that Dover is liable for Liphard's injuries.
 
 
 10
 Though the accident occurred in the elevator shaft, the record reveals that Liphard was working under Haskin's direction for Gerace when injured. In fact, Gerace hired Liphard, paid his salary, assigned his work, and had the sole authority to fire him. Indeed, during oral arguments Liphard's attorney conceded that Liphard is currently receiving workers' compensation benefits from Gerace arising from this accident. Though various Michigan statutes and provisions could be read to suggest that Liphard should not have been working in the elevator shaft because he is not a licensed elevator journeyman and was not under the supervision of a licensed elevator journeyman, these possible violations in no way suggest that Liphard was a Dover employee when he sustained his injuries. Moreover, the district court properly rejected Liphard's reliance on Michigan regulations governing the use and operation of scaffolding because Liphard failed to support his claim that he was employed by Dover at the time of his injury.
 
 
 11
 Though Liphard also asserts that Dover had a duty to protect him from dangerous conditions because he was a business invitee, see Riddle v. McLouth Steel Prods. Corp., 440 Mich. 85, 96 (1992) ("If the plaintiff is a business invitee, the premises owner has a duty to exercise due care to protect the invitee from dangerous conditions."), Dover is not the owner of the premises and Dover did not have exclusive control of the elevator shaft when Liphard sustained his injury. In fact, the record reveals that the general contractor, Gerace, was in the best position to prevent Liphard's injury.
 
 
 12
 Accordingly, we AFFIRM.
 
 
 
 [1]
 Because Tammy Liphard's loss of consortium claim is entirely dependent upon the success of her husband's claims, we refer to Bruce Liphard's claims only