Weaver, J.
I concur in the result of the majority opinion. Plaintiff presented no evidence that the pothole was unreasonably dangerous despite its obviousness.
I write separately because the majority unnecessarily introduces — in dicta — a new standard by which open and obvious defects will be deemed unreasonably dangerous despite their open and obvious presence. Rather than introduce new standards into the open and obvious doctrine, I would remain true to existing precedent. See, e.g., Riddle v McLouth Steel Products Corp, 440 Mich 85, 96; 485 NW2d 676 (1992), and Williams v Cunningham Drug Stores, Inc, 429 Mich 495, 500; 418 NW2d 381 (1988).
The majority’s new standard focuses on special aspects of an open and obvious condition that give rise to the “unreasonable]... risk of severe harm.” *545 Ante at 518 (emphasis added).[1] This standard has no precedent in Michigan’s common law of the open and obvious doctrine. This Court has not suggested — until today — that the degree of potential harm is relevant to whether the risk of harm posed by a condition remains unreasonable despite its obviousness.
In an apparent effort to provide guidance to the bench and bar, the majority presents unlikely hypothetical examples. When launching new legal principles from a factual vacuum, it would be more helpful to apply this new severe-harm standard to an actual case that came before this Court, such as Singerman v Municipal Service Bureau, Inc, 455 Mich 135; 565 NW2d 383 (1997). Singerman was left unresolved by a three-three split. It is indeed unfortunate that the majority fails to take this opportunity to clarify its new standard by application to the facts of this recent case.
In Singerman, the plaintiff alleging negligence sued the operator of a public hockey rink. Plaintiff was an experienced hockey player who joined or was observing a pick-up game. Plaintiff went onto the ice without protective equipment and, at one point, stood *546 leaning on the goal net. As the scrimmage moved his way, plaintiff was hit in the eye by a puck shot on goal, and he sustained severe damage. Plaintiff testified that he saw the player take the shot, but was unable to avoid the puck because of poor lighting. The issue presented was whether the defendant should have anticipated the harm despite plaintiffs knowledge of the hazardous condition.
Because severe harm is inherent to hockey, indeed the plaintiff in Singerman lost an eye, it would seem under the majority’s severe-harm standard the question whether the risk of harm caused by the fighting defect was unreasonable despite its obviousness would be for the jury. This, despite the fact that the fighting in the rink was alleged to be consistently inadequate and there was no chance that plaintiff would forget the potentially hazardous condition “because the condition was constantly before him.” Singerman at 144 (Weaver, J., opinion). I believe that Singerman was an appropriate case for summary disposition in favor of the defendant because the open and obvious danger of the inadequate fighting was not unreasonably dangerous despite the potential for severe harm.
Contrary to the majority’s suggestion that my position would allow “no tort claim [to] fie,” ante at 519, n 2, my position simply remains true to well-established articulations of the open and obvious doctrine. These articulations focus on circumstances that make a risk unreasonable despite its openness and obviousness, rather than on the nature of the potential harm. See, e.g., Riddle, supra at 96 (holding that “[w]here the dangers are known to the invitee or are so obvious that the invitee might reasonably be *547 expected to discover them, an invitar owes no duty to protect or warn the invitee unless he should anticipate the harm despite knowledge of it on behalf of the invitee”); Williams v Cunningham Drug Stores, Inc, supra at 500 (stating that “[t]he duty a possessor of land owes his invitees is not absolute .... It does not extend to conditions from which an unreasonable risk cannot be anticipated or to dangers so obvious and apparent that an invitee may be expected to discover them himself. Furthermore, ‘the occupier is not an insurer of the safety of invitees, and his duty is only to exercise reasonable care for their protection’ ”).

 The majority also offers a new definition of dicta to justify its adoption of the new severe-harm standard. The majority states that “the lack of such special aspects [i.e., the unreasonable risk of severe harm] in the present case forms the basis of our holding that defendant was entitled to a grant of summary disposition in its favor.” Ante at 519-520, n 3. This explanation, in my view, acknowledges that the severe-harm standard is “dicta.” “Dicta” is defined as “]o]pinions of a judge which do not embody the resolution or determination of the specific case before the court. Expressions in court’s opinion which go beyond the facts before court and therefore are individual views of author and not binding in subsequent cases as legal precedent.” Black’s Law Dictionary, 6th ed. The severe-harm standard is not at issue on the facts of this case, is not briefed by the parties, and is not essential to the determination of this case.