*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# S T A T E   O F   M I C H I G A N

# C O U R T   O F   A P P E A L S

JOSHUA DAVID BRIERLEY,

Plaintiff-Appellant,

v

TIMOTHY SAVAS and DOROTHY SAVAS,

Defendants-Appellees.

UNPUBLISHED
June 22, 2023

No. 362016
Wayne Circuit Court
LC No. 21-005139-NO

Before: LETICA, P.J., and BORRELLO and RIORDAN, JJ.

PER CURIAM.

Plaintiff Joshua David Brierley appeals as of right the trial court's order granting summary disposition in favor of defendants Timothy and Dorothy Savas under MCR 2.116(C)(10). On appeal, plaintiff argues that his premises-liability claim should not have been dismissed because the alleged hazard was not open and obvious, but even if it was, it was effectively unavoidable; that he established causation; and that defendants had notice of the hazard. Plaintiff also argues that he stated a second claim in his complaint that sounded in ordinary negligence. We affirm.

## I. FACTS

On April 23, 2021, plaintiff filed his complaint against defendants, alleging as follows:

¶ 4. That on or about May 6, 2018, Plaintiff was an invitee/tenant on Defendants premises located at 13141 Ormond Drive, Van Buren Twp., MI 48111; on that date, Plaintiff was in the process of mowing Defendants lawn and instructed Defendants many times to not water the lawn prior to the service, when suddenly and without warning, Plaintiff slipped and fell due to an accumulation of water (i.e. sprinklers) which was extremely slippery and remained in Plaintiff's path of travel that had been allowed to accumulate, for an unreasonable length of time and was not readily visible to invitees/tenants.

Paragraph 4 was the only allegation in the complaint that explained the relevant factual circumstances of the fall itself.

Plaintiff alleged that as a result of his fall, his left foot went under the lawn mower and caused "[s]evere injuries to his foot and toes."[1] Plaintiff claimed that defendants breached several statutory and common-law duties, all of which essentially related to the alleged failure of defendants to maintain safe premises. For example, plaintiff alleged "[t]hat the Defendants breached the warranty of habitability owed to the Plaintiff in failing to maintain the area on Defendants' premises, over which the Defendants retained control to maintain and repair." He sought damages exceeding $25,000.

On July 14, 2021, plaintiff filed his initial disclosures, which stated, in relevant part:

**FACTUAL BASIS:**

On May 6, 2018, Plaintiff was an invitee/tenant on Defendants premises located at 13141 Ormond Drive, Van Buren Twp., MI 48111; that on that date, Plaintiff was in the process of mowing Defendants lawn and instructed Defendants many times to not water the lawn prior to the service, when suddenly and without warning, Plaintiff slipped and fell due to an accumulation of water (i.e. sprinklers) which was extremely slippery and remained in Plaintiff's path of travel that had been allowed to accumulate, for an unreasonable length of time and was not readily visible to invitees/tenants. That at all times relevant to the within, the Defendants owed a duty to the Plaintiff to properly maintain the premises and were in a position to best control and prevent the condition exposing the Plaintiff to the unreasonable risk of harm, and knew of and created the defective and unsafe condition then and there existing on the premises.

On April 19, 2022, defendants moved for summary disposition under MCR 2.116(C)(10). In the accompanying brief, defendants argued as follows. First, defendants argued that plaintiff had changed his story about the injury multiple times, initially telling his doctors that his foot simply "got caught" under the lawnmower, then alleging in his complaint that he slipped on the wet grass, and finally speculating during his deposition that he lost his footing on a hole in the ground. Defendants contended that the changing stories showed that plaintiff's claim was based on speculation and conjecture about causation.

Second, defendants argued that plaintiff's premises-liability claim[2] was barred by the open-and-obvious doctrine because he admitted during his deposition that he was aware that the grass was wet before mowing it, and a reasonable person should be aware that a grassy lawn may be uneven due to such causes as animal activity. Defendants stated that "[w]et grass and uneven terrain are such common occurrences, are not unreasonably dangerous, and thus do not present special aspects."

---

[1] Subsequent evidence indicated that his left "great toe" had to be partially amputated, and he suffered other injuries such as altered gait.

[2] The unstated assumption of defendants' motion and brief is that plaintiff's complaint exclusively sounds in premises liability.

Third, defendants argued that plaintiff did not establish that defendants knew or should have known about the alleged hazard. Defendants explained that plaintiff had not consistently identified the cause of his fall and that he admitted during his deposition that he did not see the purported hole in the ground, so it is impossible to impute any knowledge of a hazard to defendants.

Defendants supported their motion for summary disposition with excerpts from plaintiff's deposition describing the event in question. In his deposition, plaintiff testified that he mowed defendants' lawn on a weekly basis during the summer of 2017 and that the "season" began in May 2018. Plaintiff explained that in 2018, he did not have a regular schedule for mowing defendants' lawn but would do so whenever defendant Timothy Savas sent him a text message asking him to do so. On May 6, 2018, defendant Timothy Savas sent him a text message asking him to mow the lawn. Plaintiff recalled that defendant Timothy Savas told plaintiff by text message or in-person "that he was having a party that afternoon or that evening and he wanted me there to mow the lawn. And I was so against it because of the morning, you know, if you water and then the morning dew, that's two bad combinations on a hillside, on top of his always doing some landscaping it just – it got to be monotonous. I didn't even want to go that morning." The exchange continued:

Q. So you mentioned the morning dew. So you already knew it was dewy out when he texted you?

A. Not really, no. I showed up and I was like, "Oh, hey, this is what I'm dealing with now."

Q. So when you showed up there was morning dew on the ground?

A. Yes. And he was extremely persistent on it being cut because he was having people over. I kind of told him, like I said, "Hey, I don't think it's a good idea."

Q. And then you made mention that he had been watering. Was he watering when you arrived?

A. I bet you it [the sprinklers] did go off in the morning.

Plaintiff testified that he used a "basic self-propelled or push lawn mower," which he brought to defendants' house with the assistance of a family friend. He started mowing in defendants' backyard along the fence and had not completed one "pass" before he was injured. The following exchange reflects plaintiff's description of the fall and surrounding circumstances:

Q. So take me through what actually happened.

A. So when I arrived in the backyard I figured, okay, he was being extra persistent on me doing it, I didn't really want to do it but I'm like, all right, I'll do it. I go ahead, start to make my first pass and I could see the yard, I could see everything everywhere, and I believe there must have been a hole or some uneven ground there that I lost my footing on. It's like – it's like the ground and the grass

was camouflaging the hole there or the uneven ground. That side of his yard in particular he was always doing something with. I remember it. Not vaguely, I do remember that.

Q. So your complaint in [sic] Discovery responses so far said that you slipped because it was wet.

A. Yeah. Now I started thinking back about how he – he was always doing something with his yard. He was always taking a bush out and putting one in. I thought maybe that side, you know, maybe there was something going on there to where I – you know, I couldn't see because of the grass being so high as it was, and one thing led to another and it just – the rest is history.

Q. You said maybe that side, maybe there was something there?

A. No. That side that I made the first pass on, that was the side that he was always doing something with.

Q. When you said maybe there was something there, why are you saying "maybe"?

A. Because you brought up the wet grass, slipping on wet grass. I think – I'm almost sure it was uneven ground and a hole there.

Q. So at first you thought it was wet grass but now that you think about it you think there was uneven ground?

A. Yes.

Q. Do you remember looking and seeing this uneven ground or the hole?

A. Well, no, because the grass was eight or more inches tall. It was kind of like covering whatever must have been doing on where I slipped and fell at.

Q. What leads you to believe it was a hole?

A. Because he was always – he was always changing his landscape design. He was either pulling edging out, putting edging in, putting a bush in, putting flowers in. He was always doing something in his yard in that area, so that's what makes me believe that that's the reason why that happened.

Q. Was there something about the way you fell that makes you believe that?

A. Yes.

Q. What's that?

A. The uneven terrain. I mean –

Q. Let's just – we'll back up a little bit.

So you're pushing the lawn mower; right?

You're making the first pass along the fence line?

A. Yes.

Q. And what exactly happens as you're pushing the lawn mower?

A. Between the uneven ground and the wet grass I kind of slipped, and my body weight just kind of like shoved me and my foot went underneath the lawn mower.

Q. You slipped forwards or backwards?

A. Towards the lawn mower.

Q. So then at that point that you're slipping your hands are still on the lawn mower?

A. Yes.

\* \* \*

A. I don't remember seeing any of the work that he was doing.

Q. Did you see any holes?

A. No.

\* \* \*

Q. Do you remember seeing any plants out of place or anything like that?

A. No.

Q. Did it look like he had been moving things around on that side?

A. No. He was moving patio furniture from his house to the – he's got like a boat dock area and that's what he was doing. He wasn't doing anything like that that day.

Q. Did you see any areas that looked like they had been dug?

A. No.

Q. You mentioned the grass was – did you say eight inches tall?

A. From what I could see, yeah, I believe it was eight inches tall.

Q. And was it like that the entire way along the fence?

A. Yes.

Plaintiff testified that he was mowing in a downhill direction when injured, and the following exchange subsequently occurred:

Q. If you initially thought it was dangerous and wasn't going to be good like you said earlier, why did you stay and cut the grass?

A. He almost forced me to do it.

Q. And how is that?

A. Mr. Savas, I mean, he was so hot – that guy, he's a special individual, I'll tell you that, to say the least, and he just kind of was like, "You have to do it," like, "I have people coming over." There was no – there was no saying no to that guy, no can I come back later, no can I come back tomorrow.

Q. Did he threaten you in any way?

A. Sort of, yes.

Q. How so?

A. "You have to do this otherwise" – almost like, "or else you're not going to be able to cut my yard again."

Q. Did he threaten you personally with anything other than not being able to cut his grass again?

A. No. No. Nothing like that but, like, yeah.

On May 18, 2022, plaintiff responded to defendants' motion for summary disposition, arguing that causation was not speculative because he clearly testified at his deposition that he lost his footing on a hole or uneven terrain, that the hazard was not open and obvious because it was hidden by wet grass, that it was effectively unavoidable because he had to encounter it to mow the lawn as directed by defendant Timothy Savas, and that defendants were liable under a theory of ordinary negligence "in causing uneven terrain in their lawn and failing to remedy the tripping hazard."

At the motion hearing on June 13, 2022, the trial court granted summary disposition in favor of defendants, reasoning as follows. First, plaintiff's complaint sounded exclusively in premises liability. Second, plaintiff failed to establish causation because he "switched his theory." In particular, plaintiff originally alleged that the sprinklers resulted in wet grass, but "much later" into the proceedings, he asserted that he slipped and fell on a hole in the ground. Third, the alleged

hazard of the hole in the ground that was concealed by wet grass was nonetheless subject to the open-and-obvious doctrine because "[i]t is common knowledge that soil is typically exposed to the elements, and human, and animal activity, all of which can create depressions and holes." Fourth, plaintiff failed to establish that defendants had notice of the alleged hazard because "there is just guessing that [defendant Timothy Savas] moves bushes around, and so, that might have been a, a bush hole."

The trial court entered an order the following day memorializing its decision on the record. Plaintiff now appeals.

## II. STANDARD OF REVIEW

"This Court reviews de novo a trial court's decision to grant or deny summary disposition under MCR 2.116(C)(10)." *Mazzola v Deeplands Dev Co LLC*, 329 Mich App 216, 223; 942 NW2d 107 (2019). "A motion under MCR 2.116(C)(10) . . . tests the factual sufficiency of a claim." *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 160; 934 NW2d 665 (2019) (emphasis omitted). "When considering such a motion, a trial court must consider all evidence submitted by the parties in the light most favorable to the party opposing the motion." *Id*. "A motion under MCR 2.116(C)(10) may only be granted when there is no genuine issue of material fact." *Id*. "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003).

## III. DISCUSSION

Plaintiff argues that he established a genuine issue of material fact concerning (1) causation; (2) whether the alleged hazard was open and obvious; and (3) if it was not open and obvious, whether the hazard was effectively unavoidable. Plaintiff also argues that the trial court erred by concluding that his complaint exclusively sounded in premises liability because he also stated a claim for ordinary negligence.

To prevail on a premises-liability claim, a plaintiff must show the four elements of a negligence claim: (1) "the defendant owed a legal duty to the plaintiff," (2) "the defendant breached or violated the legal duty it owed to the plaintiff," (3) "the plaintiff suffered damages," and (4) "the defendant's breach of duty was a proximate cause of the damages suffered by the plaintiff." *Riddle v McLouth Steel Prod Corp*, 440 Mich 85, 96 n 10; 485 NW2d 676 (1992).

With regard to the duty element, "[i]t is well settled in Michigan that a premises owner must maintain his or her property in a reasonably safe condition and has a duty to exercise due care to protect invitees from conditions that might result in injury." *Id*. at 90. "[T]his duty arises when the defendant has actual or constructive notice of the condition." *Banks v Exxon Mobil Corp*, 477 Mich 983, 983 (2007). "But this duty does not extend to dangerous conditions that are open and obvious." *Estate of Livings v Sage's Investment Group, LLC*, 507 Mich 328, 337; 968 NW2d 397 (2021). "Put differently, where the dangers are known to the invitee or are so obvious that the invitee might reasonably be expected to discover them, an invitor owes no duty to protect or warn the invitee." *Id*. (cleaned up).

-7-

"Yet, as a limited exception to the circumscribed duty owed for open and obvious hazards, liability may arise when *special aspects* of a condition make even an open and obvious risk unreasonable. When such special aspects exist, a premises possessor must take reasonable steps to protect an invitee from that *unreasonable* risk of harm." *Hoffner v Lanctoe*, 492 Mich 450, 461; 821 NW2d 88 (2012) (emphasis in original). Our Supreme Court has recognized "two instances in which the special aspects of an open and obvious hazard could give rise to liability: when the danger is *unreasonably dangerous* or when the danger is *effectively unavoidable*." *Id*. at 463 (emphasis in original). "In either circumstance, such dangers are those that give rise to a uniquely high likelihood of harm or severity of harm if the risk is not avoided and thus must be differentiated from those risks posed by ordinary conditions or typical open and obvious hazards." *Id*. (cleaned up).

"[I]t is reasonable to anticipate that a person will proceed to encounter a known or obvious danger for purposes of his or her work. Accordingly, an open and obvious hazard can become effectively unavoidable if the employee confronted it to enter his or her workplace for work purposes." *Estate of Livings*, 507 Mich at 345. "[T]he overall analysis centers on whether a reasonable premises possessor in the defendant's circumstances could reasonably foresee that the employee would confront the hazard despite its obviousness." *Id*. at 346. "[T]he employee's decision to confront the hazard to enter his or her workplace is considered under an objective standard." *Id*. "This standard's application will depend on the facts of the case, but the key is whether alternatives were available and would have been used by a reasonable person in the employee's circumstances." *Id*. at 347. "For example, an employee might be able to avoid a hazard by taking a different path to work." *Id*.

With regard to the causation element, "proving proximate cause actually entails proof of two separate elements: (1) cause in fact, and (2) legal cause, also known as proximate cause." *Skinner v Square D Co*, 445 Mich 153, 162-163; 516 NW2d 475 (1994) (quotation marks and citation omitted). "The cause in fact element generally requires showing that 'but for' the defendant's actions, the plaintiff's injury would not have occurred." *Id*. at 163. "To be adequate, a plaintiff's circumstantial proof must facilitate reasonable inferences of causation, not mere speculation." *Id*. at 164.

> As a theory of causation, a conjecture is simply an explanation consistent with known facts or conditions, but not deducible from them as a reasonable inference. There may be 2 or more plausible explanations as to how an event happened or what produced it; yet, if the evidence is without selective application to any 1 of them, they remain conjectures only. On the other hand, if there is evidence which points to any 1 theory of causation, indicating a logical sequence of cause and effect, then there is a juridical basis for such a determination, notwithstanding the existence of other plausible theories with or without support in the evidence. [*Id*. (quotation marks and citation omitted).]

To illustrate, a statement that a possible cause "could not be eliminated" is insufficient to establish the causation element. See *MEEMIC Ins Co v DTE Energy Co*, 292 Mich App 278, 282; 807 NW2d 407 (2011) ("The statement that the meter 'could not be eliminated' as a cause of the fire does not allow a factfinder to infer that the meter was the cause in fact of the fire. Instead, a factfinder would have to speculate that the meter caused the fire."). Similarly, an "ever-changing

an uncorroborated account" also is insufficient to establish the causation element. See *D'Ambrosio v McCready*, 225 Mich App 90, 96; 570 NW2d 797 (1997) ("Plaintiff's ever-changing and uncorroborated account presents nothing more than his 'pure speculation or conjecture' that defendant knew or had reason to know that a towel was on the stairs presenting a dangerous condition at the time of the accident.") (citation omitted).

In this case, the parties do not dispute that plaintiff was an invitee of defendants and that common principles of premises liability are otherwise applicable.[3] In any event, we conclude that plaintiff did not establish causation.

Plaintiff testified, "I believe there must have been a hole or some uneven ground there that I lost my footing on." He added, "I thought maybe that side, you know, maybe there was something going on there to where I – you know, I couldn't see because of the grass being so high." This tentative language suggests the mere possibility, not the actual fact, that there was a hole in the ground. Moreover, while plaintiff testified that defendant Timothy Savas was often doing landscaping work near the fence where he was injured, plaintiff admitted that he did not see any landscaping work that day or even the hole itself. And when asked whether "there was something about the way [he] fell" that led him to believe that there was a hole in the ground, plaintiff responded, "The uneven terrain." In other words, plaintiff's reasoning was circular—he testified that there must have been a hole in the ground that caused him to fall because he fell on uneven terrain. This testimony presents mere "speculation" that does not establish cause-in-fact. See *Skinner*, 445 Mich at 164.

Admittedly, plaintiff testified that "I'm almost sure it was uneven ground and a hole there." However, because plaintiff did not actually see the hole, the only way to prove that there was a hole is through circumstantial evidence. See *id*. But plaintiff did not provide such circumstantial evidence, such as testifying that there was ongoing landscaping work in the area or explaining that the manner in which he fell was consistent with a hole in the ground. Thus, the evidence did not support an inference of causation. *Id*.

We also acknowledge that plaintiff alleged in his complaint and first initial disclosures that the grass was wet and "extremely slippery." Plaintiff similarly testified at his deposition. And, as noted in plaintiff's complaint and first initial disclosures, the wet grass could have caused the fall because it was "extremely slippery." However, plaintiff did not testify at his deposition that the "extremely slippery" wet grass caused the fall, beyond the fact that it merely concealed the

---

[3] The Second Restatement of Torts indicates that the relationship between defendants and plaintiff may have been master-servant, and while a servant is generally considered an invitee, "[t]he relation of master and servant has certain peculiarities which have given to the servant a somewhat different degree of protection from that which is given to other classes of business visitors. In some particulars the protection is greater; in others, less." 2 Restatement Torts, 2d, § 332, comment *j*. "These peculiarities require that the rules which determine the liability of a master to a servant be stated in Chapter 14 of the Restatement of Agency, Second." *Id*. However, no party argues that plaintiff was entitled to anything other than the protections accorded to an ordinary invitee.

purported hole in the ground. To the contrary, when asked at his deposition about the wet grass referenced in his complaint and first initial disclosures, plaintiff said, "[Y]ou brought up the wet grass, slipping on wet grass. I think – I'm almost sure it was uneven ground and a hole there." Counsel then asked, "So at first you thought it was wet grass but now that you think about it you think there was uneven ground?" Plaintiff responded affirmatively, thus indicating that his causation theory had changed from slipping on the wet grass to losing his balance because of the hole in the ground. "[T]he deposition testimony is binding on the plaintiff even though it contradicts [his] complaint . . . ." *Stefan v White*, 76 Mich App 654, 659; 257 NW2d 206 (1977).[4]

For these reasons, we conclude that plaintiff did not establish causation. Because causation is a necessary element of any negligence claim, *Riddle*, 440 Mich at 96 n 10, the trial court's dismissal of his complaint is affirmed on this basis alone regardless of whether plaintiff is correct that he stated a second claim for ordinary negligence.

## IV. CONCLUSION

The trial court did not err by concluding that plaintiff failed to establish the element of causation, which is an essential element of any negligence claim. Therefore, we affirm.

/s/ Anica Letica
/s/ Michael J. Riordan

---

[4] Rather than engaging in selective, testimonial "fact finding" as the dissent alleges, we lay out the plaintiff's deposition testimony as it is memorialized in the record and as it relates to plaintiff's ever-evolving theory of causation.