*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

MARY DIPERNA,

        Plaintiff-Appellant,

UNPUBLISHED
February 15, 2024

v

GIUSEPPE MAINELLA and FILIPPO MAINELLA,

        Defendants-Appellees.

No. 355207
Wayne Circuit Court
LC No. 19-011789-NO

## ON REMAND

Before: BORRELLO, P.J., and MARKEY and SERVITTO, JJ.

PER CURIAM.

Plaintiff allegedly tripped in a pothole in the unlit parking lot of a building that was owned by defendants. The trial court granted summary disposition in favor of defendants, determining that there was no genuine issue of fact that the pothole constituted an open and obvious hazard despite the darkness when plaintiff fell. In our previous opinion, we affirmed the trial court's ruling. *DiPerna v Mainella*, unpublished per curiam opinion of the Court of Appeals, issued April 14, 2022 (Docket No. 355207); unpub op at 1. On plaintiff's application for leave to appeal in the Michigan Supreme Court, the Court, in lieu of granting leave, vacated our judgment and remanded the case to us for reconsideration in light of *Kandil-Elsayed v F & E Oil, Inc*, 512 Mich 95; ___ NW2d ___ (2023). *DiPerna v Mainella*, 997 NW2d 219 (2023). We now reverse and remand for further proceedings.

## I. PRIOR OPINION

We incorporate and adopt the following portion of our earlier opinion that was not affected by the Supreme Court's order:

> Plaintiff operated a dog-grooming business for roughly three to four years out of a storefront that she rented from defendants. Plaintiff typically arrived at the business around 5:30 a.m. six days a week and parked in the same parking space each day. Because there was no functioning lighting in the parking lot, the lot was unlit when plaintiff arrived in the early morning. On November 30, 2017, plaintiff

arrived at work and discovered that someone had parked in her usual spot. Consequently, she parked one space over. Upon exiting her vehicle, plaintiff stepped into the pothole and tripped, falling and allegedly sustaining multiple injuries. At her deposition, plaintiff testified that she had never noticed the pothole in the past because she had never parked in that particular space. She indicated that in all of the years using the parking lot, she had not seen the pothole. Plaintiff testified that none of her customers had ever complained about the parking lot's condition, nor had she complained to defendants about the condition of the lot until after she tripped. After the fall, when the sun was up, plaintiff examined the lot and clearly saw the pothole. She described the pothole as being as big as a "dinner plate." But, according to plaintiff, it was not observable in the dark. There was a litany of evidence regarding the lighting of the parking lot, or lack thereof, and the availability of lighting from various sources.

In an affidavit executed by plaintiff's daughter and relied upon by plaintiff in challenging the motion for summary disposition, the daughter averred:

> My mother . . . had been a tenant at this building for several years prior to the fall which occurred on November 30, 2017. During that time, I would stop in approximately once or twice a week to visit or assist my mother with her work. It is my opinion that the parking lot in question was in a state of serious disrepair for many months, if not years, prior to this trip and fall incident occurring. The parking lot had numerous potholes, some of which were haphazardly filled with asphalt "cold patch", and others that were just crumbling and deteriorating. It is my understanding that my mother complained numerous times to the owners of the building about various defects, but the problems were never addressed. It is my opinion that the pothole in question had been present for at least several months, if not years, prior to the fall. Given the amount of deterioration, its size and different colors, it would seem that such a defect would take quite some time to develop. I remember thinking for at least a year or so before her fall; that the building was poorly maintained and the parking lot was in a deteriorated state.

Plaintiff's deposition testimony did not contradict her daughter's affidavit. Plaintiff notes in her brief on appeal that "[m]uch of the parking lot was in a state of disrepair, and the pothole in question was quite large."

Plaintiff subsequently brought suit and, following discovery, defendants moved for summary disposition, arguing that there was no question of fact that the pothole was open and obvious and that defendants had no notice of the pothole. The trial court, without addressing the issue of notice, granted summary disposition to defendants, concluding that there was no question of fact that the pothole was open and obvious. The court explained that plaintiff had parked in the lot six days a week for several years and was aware of the deteriorated condition of the parking

lot and aware of "the lack of lighting." The trial court emphasized that "[p]laintiff was familiar with the lot." Plaintiff now appeals.

Plaintiff raises two issues on appeal. She first argues that the trial court erred by granting summary disposition in favor of defendants because there existed a genuine issue of material fact regarding whether the pothole was an open and obvious hazard. In addition, if by chance defendants raise the notice issue as an alternative basis to affirm, plaintiff contends that there exists a question of fact with respect to whether defendants had constructive notice of the pothole.

We review de novo a trial court's decision on a motion for summary disposition. *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019). Summary disposition is appropriate under MCR 2.116(C)(10) when, "[e]xcept as to the amount of damages, there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law." A motion for summary disposition brought under MCR 2.116(C)(10) "tests the *factual sufficiency* of a claim." *El-Khalil*, 504 Mich at 160. Courts must consider all the evidence in a light most favorable to the nonmoving party. *Id*. The motion may only be granted when there is no genuine issue of material fact. *Id*. "A genuine issue of material fact exists when the record leaves open an issue upon which reasonable minds might differ." *Johnson v VanderKooi*, 502 Mich 751, 761; 918 NW2d 785 (2018) (quotation marks, citation, and brackets omitted).

The moving party may satisfy its burden under MCR 2.116(C)(10) through the submission of affirmative evidence that negates an essential element of the nonmoving party's cause of action or by demonstrating to the court that the nonmoving party's evidence is insufficient to establish an essential element of the party's claim. *Lowrey v LMPS & LMPJ, Inc*, 500 Mich 1, 7; 890 NW2d 344 (2016). Once this initial burden is met, the nonmovant must "set forth specific facts showing that a genuine issue of material fact exists" and "may not rely on mere allegations or denials in pleadings." *Id*. (quotation marks and citations omitted). "If the opposing party fails to present documentary evidence establishing the existence of a material factual dispute, the motion is properly granted." *Id*. (quotation marks and citations omitted). The trial court is not permitted to assess credibility, weigh the evidence, or resolve factual disputes, and if material evidence conflicts, it is not appropriate to grant a motion for summary disposition under MCR 2.116(C)(10). *Pioneer State Mut Ins Co v Dells*, 301 Mich App 368, 377; 836 NW2d 257 (2013). "Like the trial court's inquiry, when an appellate court reviews a motion for summary disposition, it makes all legitimate inferences in favor of the nonmoving party." *Skinner v Square D Co*, 445 Mich 153, 162; 516 NW2d 475 (1994). A court may only consider substantively admissible evidence actually proffered by the parties when ruling on the motion. *Maiden v Rozwood*, 461 Mich 109, 121; 597 NW2d 817 (1999); see also MCR 2.116(G)(6). [*DiPerna*, unpub op at 1-3 (section headings omitted).]

We proceeded to discuss principles regarding premises liability in general, the "duty" element of a premises-liability action, the open and obvious danger doctrine, and the doctrine's

application to assessing the duty element. *Id.* at 3-4. We then engaged in the following discussion in resolving the appeal:

> It is well established that "ordinary potholes in a parking lot" are considered "typical open and obvious dangers." *Lugo v Ameritech Corp, Inc*, 464 Mich 512, 520; 629 NW2d 384 (2001). This Court has acknowledged that an open and obvious danger can become a hidden danger in poor or nonexistent lighting, thereby giving rise to a factual question for a jury to resolve regarding whether the danger was indeed open and obvious. See, e.g., *Blackwell v Franchi*, 318 Mich App 573, 577-579; 899 NW2d 415 (2017); *Abke v Vandenberg*, 239 Mich App 359, 362-363; 608 NW2d 73 (2000).

> In this case, plaintiff testified that she had never noticed or seen the particular pothole that caused her fall because she had never previously parked in that specific parking space. She also indicated that while the pothole was observable on casual inspection when light out or illuminated, the pothole could not be seen in the early-morning darkness. Although plaintiff may not have definitively known of the pothole that she stepped into upon exiting her minivan, which we must accept for purposes of the (C)(10) motion, she knew that the parking lot was in serious disrepair and had numerous potholes. She also knew that it was dark outside and that she was not parking her vehicle in the usual parking spot. Accordingly, the parking lot in general presented a hazard under circumstances of which plaintiff was fully aware. In other words, she had to have known that there was a possibility that there was a pothole or deteriorated pavement where she stepped when exiting her vehicle in the darkness at an unfamiliar spot. This is a case that is more accurately characterized as one in which no duty arose because plaintiff actually knew of the potential danger. *Riddle* [*v McLouth Steel Prod Corp*, 440 Mich 85, 95-96; 485 NW2d 676 (1992)]. And that is exactly how the trial court analyzed the case. We conclude that the trial court did not err in granting defendants' motion for summary disposition.

> We acknowledge that plaintiff herself did not specifically testify that the parking lot was in disrepair and had potholes or that she knew that such was the case. But plaintiff's daughter testified that the parking lot was in "a state of serious disrepair" and "had numerous potholes," and plaintiff argued to the trial court that the lot was in bad repair and a deteriorated condition. Plaintiff parked in the lot six days a week for roughly three to four years, and she never testified or claimed that the parking lot was in good repair or that she had no knowledge that the lot was in serious disrepair and riddled with potholes. She did not contradict her daughter's affidavit. Plaintiff contended that defendants had actual or constructive knowledge of the absence of lighting and of the crumbling, potholed parking lot. So certainly plaintiff, who spent considerably more time at the location than defendants, knew of the lack of lighting and the parking lot's state of disrepair. We cannot find that a genuine issue of material fact exists on those matters.

> In *Blackwell*, the plaintiff, while attending a dinner party, stepped from a hallway into an unlit mudroom, and there was an approximately eight-inch drop-

off as one stepped into the mudroom from the hallway. *Blackwell*, 318 Mich App at 575, 578. The plaintiff fell while stepping into the mudroom, and there was evidence that the darkness or lack of lighting hid the sharp drop-off to those entering the mudroom. *Id.* There is no indication that the plaintiff in *Blackwell* was previously familiar with the mudroom or that she had any knowledge that she was walking into an unlit room until it was too late. Accordingly, *Blackwell* is easily distinguishable.

In *Abke*, the defendant argued that the trial court should have granted his motion for a directed verdict or his postjudgment motions under the following set of circumstances:

> In December 1993, plaintiff went to defendant's retail produce outlet to purchase hay. Because the business did not have a sufficient amount on hand to fill plaintiff's order, arrangements were made for plaintiff to go to defendant's nearby supply barn. Plaintiff was met at the supply barn by defendant, who proceeded to lead plaintiff toward the hay storage area. After they walked down a hallway, defendant led plaintiff through a sliding door. After closing the door, plaintiff turned and fell off a loading dock into the truck bay. As a result of the fall, plaintiff sustained chest and shoulder injuries, some of which required surgery. [*Abke*, 239 Mich App at 360.]

Additionally, the "[p]laintiff testified that the loading dock area in which he fell was dark and that he could only see defendant's silhouette as defendant walked away from him just before the accident." *Id.* at 362. As in *Blackwell*, there is no indication that the plaintiff in *Abke* was previously familiar with the area of the accident and its darkened state. Plaintiff's reliance on *Abke* is thus unavailing. [*DiPerna*, unpub op at 5-6.]

## II. REMAND AND *KANDIL-ELSAYED*

Our Supreme Court in *Kandil-Elsayed* substantially altered the law of premises liability with respect to the open and obvious danger doctrine, ruling as follows:

> The open and obvious nature of a condition remains a relevant inquiry in a premises-liability case. However, to the extent prior cases have held that it should be analyzed as a part of a land possessor's duty, those cases are overruled. Rather, the open and obvious nature of a danger—i.e., whether it is reasonable to expect that an average person with ordinary intelligence would have discovered it upon casual inspection—is relevant to the defendant's breach and the plaintiff's comparative fault. Contrary to the repeated, erroneous assertions in Justice VIVIANO's dissent that our decision somehow eliminates or dispenses with the open and obvious danger doctrine, we are simply moving the doctrine from duty to breach where it legally should lie. And we find support for the shift from duty to breach in several places. [*Kandil-Elsayed*, 512 Mich at 144.]

"As part of the breach inquiry, the fact-finder may consider, among other things, whether the condition was open and obvious and whether, despite its open and obvious nature, the land possessor should have anticipated harm to the invitee." *Id.* at 148. If a breach is demonstrated, as well as causation and harm, then a jury should consider the plaintiff's comparative fault, reducing the plaintiff's damages accordingly. *Id.* at 149. "A determination of the plaintiff's comparative fault may also require consideration of the open and obvious nature of the hazard and the plaintiff's choice to confront it." *Id.*[1] The Supreme Court reaffirmed the principle that the duty owed to an invitee is to exercise reasonable care to protect the invitee from an unreasonable risk of harm caused by a hazardous or dangerous condition of the land. *Id.* at 143. Under the facts presented in *Kandil-Elsayed*, the Court "conclude[d] that questions of fact remain[ed] as to whether the defendant's failure to address the ice and snow in the parking lot was reasonable." *Id.* at 150.

In the instant case, we previously concluded that the uncontroverted evidence demonstrated that plaintiff knew that the parking lot was in serious disrepair and had numerous potholes, knew that it was dark outside when she fell, and knew that she did not park her vehicle in the usual parking spot just before the incident. *DiPerna*, unpub op at 5. Therefore, plaintiff was clearly and fully aware that the parking lot posed a hazard under the existing circumstances. *Id.* We ruled that plaintiff had to have known of the possibility that there was a pothole or deteriorated pavement where she stepped when getting out of her car in the darkness at an unfamiliar spot. *Id.* While we find nothing erroneous about our past conclusions, we must now analyze the case, in part, under the "breach" element and not the "duty" element of the cause of action. Under *Kandil-Elsayed*, this requires examination of not only plaintiff's knowledge of the danger or whether the hazard was open and obvious but also whether defendants exercised reasonable care to protect plaintiff, an invitee, from an unreasonable risk of harm posed by the large pothole. *Kandil-Elsayed*, 512 Mich at 144, 148. We must now accept that defendants owed this duty to plaintiff as a matter of law regardless of plaintiff's knowledge of the hazard or the open and obvious danger doctrine.

The affidavit by plaintiff's daughter indicated that the parking lot had been in serious disrepair for a long period of time, that there were numerous potholes in the lot that were crumbling and deteriorating, some of which were haphazardly filled with "cold patch," that defendants had received myriad complaints about the lot's condition absent any substantial repairs, and that the particular pothole at issue was large and longstanding, as evidenced by its state of deterioration, size, and different colors. Plaintiff testified that in all of the years using the parking lot, she had not seen the pothole in which she tripped. Arguably, this testimony somewhat undercut the daughter's affidavit, suggesting that the pothole may not have been in existence for a long time. But then photographs of the parking lot supported plaintiff's contention that it was poorly maintained and in a deteriorated condition. And the photos showing patches in the parking lot suggested that defendants had made feeble attempts at repairs. Defendant Giuseppe Mainella

---

[1] "Because an 'open and obvious' analysis frequently includes an analysis of the plaintiff's own behavior—a failure to see a danger, appreciate a danger, or avoid a danger—situating the doctrine in the breach/comparative-fault analysis will allow the plaintiff's potentially negligent response to an open and obvious danger to reduce their damages, rather than cut off all recovery." *Kandil-Elsayed*, 512 Mich at 144.

claimed that he repaired potholes when tenants complained, and he testified that he visited the premises approximately once a month or once every month and a half.

On the basis of this evidence, we conclude that there exists a question of fact regarding whether defendants failed to properly address and repair the offending pothole or to otherwise act reasonably to protect plaintiff from an unreasonable risk of harm, i.e., whether defendants *breached* their duty of care.[2] Within that context, the trier of fact can take into consideration the evidence that plaintiff had knowledge of the potholes in the parking lot and its general state of disrepair or that the danger was open and obvious. Moreover, if the trier of fact finds that defendants breached their duty of care, along with finding causation and harm, plaintiffs' knowledge of the danger or its open and obvious nature can be assessed for purposes of any comparative-fault allocation on damages.

We reverse and remand for further proceedings consistent with this opinion. We do not retain jurisdiction. We decline to tax costs under MCR 7.219.

/s/ Stephen L. Borrello
/s/ Jane E. Markey
/s/ Deborah A. Servitto

---

[2] This evidence also created a genuine issue of fact concerning whether defendants had constructive notice of the pothole in which plaintiff tripped. See *Lowrey*, 500 Mich at 9.